EDWARD LEON, ET AL. *v.* STATE OF MARYLAND

[Nos. 42 and 43, October Term, 1941.]

280

Decided *January 13, 1942*.

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Eldridge Hood Young*, with whom was *Gerald Smith*, on the brief for the appellants.

*Robert E. Clapp, Jr., Assistant Attorney General*, and *Paul C. Wolman, Assistant State's Attorney for Baltimore City*, with whom were *William C. Walsh, Attorney General*, and *J. Bernard Wells, State's Attorney*, and *Anselm Sodaro, Assistant State's Attorney*, on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Edward Leon, Ceval Neal and Francis Schussle are appealing from convictions in the Criminal Court of Baltimore City on the statutory charge of bookmaking. Code, 1939, Art. 27, Sec. 291.

On June 26, 1940, Lieutenant Ralph Amrein of the Baltimore City police obtained a search warrant upon his affidavit that he had probable cause to believe that the law was being violated in rooms 309 and 311 in the Old Town Bank building in Baltimore. The police officers went to the third floor of the building with the search warrant, and on finding the door to room 311 locked, entered room 309, where they arrested Thomas M. Hubin and Allen Maged. The officers were then able to pass through an unlocked door to room 311, where they caught Leon, Neal and Schussle, appellants, as they were taking bets over the telephone. Seizure was made of a lot of race horse bets and other bookmaking paraphernalia, and also $1,110 in cash, which had been thrown behind the radiator.

In October, 1940, Maged was acquitted by the court, but Hubin and the appellants were tried by jury and found guilty. In February, 1941, after the Supreme Bench of Baltimore City granted new trials, Hubin and the appellants were again tried and convicted by a jury, and were thereupon sentenced to imprisonment. The

court subsequently overruled a motion to quash the indictment. The motion had been filed by the defendants on the theory that the search warrant had been issued without probable cause upon information unlawfully obtained by tapping telephone lines. Hubin did not appeal either from the sentence or from the order overruling the motion to quash.

The principal question in this case is whether evidence obtained by means of wire tapping is admissible in the courts of this state. Prior to the enactment of the Bouse Act in 1929, Maryland followed the ancient rule of the common law that evidence is not rendered inadmissible by the fact that it was procured by unlawful search and seizure. *Meisinger v. State*, 155 Md. 195, 141 A. 536, 142 A. 190. The Supreme Court of California explained the reason for the rule in the following language: "From the necessities of the case the law countenances many devious methods of procuring evidence in criminal cases. The whole system of espionage rests largely upon deceiving and trapping the wrongdoer into some involuntary disclosure of his crime. It dissimulates a way into his confidence; it listens at the keyhole and peers through the transomlight. It is not nice, but it is necessary in ferreting out the crimes against society which are always done in darkness and concealment." *People v. Mayen*, 188 Cal. 237; 205 P. 435, 440, 24 A. L. R. 1383. Since 1929 evidence obtained by unlawful search and seizure has been inadmissible in trials of misdemeanors in the courts of the state. Acts of 1929, ch. 194, Code, 1939, Art. 35, Sec. 5; *Heyward v. State*, 161 Md. 685, 694, 158 A. 897; *Silverstein v. State*, 176 Md. 533, 540, 6 A. 2d 465. Unquestionably it is within the established power of the state to prescribe the evidence which may be received in the courts of its own government. *Adams v. New York*, 192 U. S. 585, 24 S. Ct. 372, 376, 48 L. Ed. 575, 581. The legislature has also enacted a law providing that if it appears at any time that there is no probable cause for believing the existence of the grounds on which a warrant was issued, the property seized thereunder shall be re-

stored to the person from whom it was seized. Acts of 1939, ch. 749, Code, 1939, Art. 27, Sec. 306. It is accordingly now held in Maryland that if a search warrant has been issued without probable cause, bookmaking paraphernalia seized thereunder is inadmissible in evidence. *Mazer v. State,* 179 Md. 293, 18 A. 2d 217. If a search warrant does not show propable cause for its issuance, a prosecution based upon the warrant and upon facts discovered in its execution cannot supply deficiencies antecedent to the warrant, and such a prosecution fails before it is begun. *Goodman v. State,* 178 Md. 1, 11 A. 2d 635.

In the decision rendered in the *Olmstead Case, infra,* in 1928, the United States Supreme Court held that the protection guaranteed to American citizens by the Fourth Amendment to the Federal Constitution against unreasonable search and seizure of their "persons, houses, papers, and effects," while extending to sealed letters and packages in the mail (*Ex parte Jackson,* 96 U. S. 727, 24 L. Ed. 877), does not extend to telegraph and telephone messages, and therefore the use of evidence of private conversations intercepted by means of wire tapping does not infringe any constitutional right. Chief Justice Taft stated in the opinion of the Court: "The amendment does not forbid what was done here. There was no searching. There was no seizure. The evidence was secured by the use of the sense of hearing and that only. There was no entry of the houses or offices of the defendants. * * * The language of the amendment cannot be extended and expanded to include telephone wires, reaching to the whole world from the defendant's house or office. The intervening wires are not part of his house or office, any more than are the highways along which they are stretched. * * * Congress may, of course, protect the secrecy of telephone messages by making them, when intercepted, inadmissible in evidence in federal criminal trials, by direct legislation, and thus depart from the common law of evidence. But the courts may not adopt such policy by attributing an enlarged and unusual meaning to the Fourth Amendment." *Olmstead v. United*

*States,* 277 U. S. 438, 48 S. Ct. 564, 568, 72 L. Ed. 944, 950, 951, 66 *A. L. R.* 376.

The Federal Communications Act of 1934 provides that "no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 *U. S. C. A.* Sec. 605. The Supreme Court construed this Act to prohibit Federal officers as well as any other persons from testifying in Federal criminal trials as to interstate messages overheard by means of tapping telephone wires. *Nardone v. United States,* 302 U. S. 379, 58 S. Ct. 275, 82 L. Ed. 314. So it is clear that divulgence of information obtained by wire tapping is unlawful, not because it is repugnant to the Constitution of the United States, but only because it is contrary to statute. *Beard v. Sanford,* 110 Fed. 2d 527, *certiorari* denied 310 U. S. 635, 60 S. Ct. 1078, 84 L. Ed. 1405. Recent adjudications have amplified this view by declaring that the interception of a telephone message, as enraging as it may be, is no worse than any other form of eavesdropping which the law countenances. *Foley v. United States,* 64 Fed. 2d. 1, 4; *United States v. Goldstein,* 120 Fed. 2d. 485, 491.

In 1939 the Supreme Court handed down two further decisions on the subject of wire tapping. One held that facts are not rendered inadmissible in a Federal prosecution on the ground that they were learned by wire tapping if knowledge of the facts has been gained also from an independent source. *Nardone v. United States,* 308 U. S. 338, 60 S. Ct. 266, 84 L. Ed. 307, 311. The other decision extended the ban against the interception and divulgence of telegraph or telephone communications to intrastate, as well as interstate, messages. *Weiss v. United States,* 308 U. S. 321, 60 S. Ct. 269, 84 L. Ed. 298. However, in view of the decision in the Olmstead case, we hold that evidence procured by wire tapping is not prohibited in the state courts, either by the Federal Constitution or by the Federal Communications Act. It is true that it is a criminal offense in Maryland, as in most other states, for

any person connected with a telegraph or telephone company to divulge the contents or nature of any message. Code, 1939, Art. 27, Sec. 580. But evidence obtained by means of wire tapping is not made inadmissible by the Bouse Act because it does not make any reference to the interception of wire communications. *Hitzelberger v. State,* 174 Md. 152, 197 A. 605; *Rowan v. State,* 175 Md. 547, 3 A. 2d 753; 134 *A. L. R.* 615. The action of the trial judge was therefore correct in refusing to quash the indictment.

The defendants also made a demand for particulars of the nature of the races, the kind of animals entered in the races, and the amounts of the bets upon the races. The rule is established in Maryland that a motion for a bill of particulars in any criminal prosecution is addressed to the sound discretion of the court, and the court's action thereon is not the subject of an appeal, unless there is some gross abuse of discretion resulting in injury to the accused. The right to a bill of particulars is a privilege allowed to the accused where the indictment is so general that it fails to disclose information sufficient to afford him a fair and reasonable opportunity to meet it and defend himself. A statute applying exclusively to violations of the gaming and lottery laws declares that it is unnecessary for the state to set forth in the indictment the particular kind of game of chance or gaming table or the particular scheme of lottery intended to be proved, but the accused may apply to the State's Attorney for a statement describing the offense more particularly. Code, 1939, Art. 27, Sec. 652. In the case at bar the State specifically charged that the defendants had made, bought and sold books and pools upon the results of races. We find no reason to question the exercise of the trial court's discretion. *Lanasa v. State,* 109 Md. 602, 612, 71 A. 1058; *State v. Lassotovitch,* 162 Md. 147, 156, 159 A. 362, 81 *A. L. R.* 69, 75; *Coblentz v. State,* 164 Md. 558, 572, 166 A. 45, *A. L. R.* 886, 895.

In demurring to the fifteen counts of the indictment, the defendants directed their attack mainly against the

second count, which charged that they had unlawfully made and sold a book and pool on the result of a "certain trotting, pacing and running race of horses and other beasts." The defendants contended that horses do not trot, pace and run in the same race. They also contended that, since whippet races are popular in Maryland, it was incumbent upon the state to disclose whether there were any dogs among the "other beasts" alleged in the indictment. The statute declares that it shall be unlawful to make or sell a book or pool on the result of "any trotting, pacing or running race of horses or other beasts, or race, contest or contingency of any kind." It is a well-settled rule in Maryland that if a statute makes it a criminal offense to do any one of several acts, which are mentioned disjunctively, an indictment based upon the statute may charge in a single count that the defendant did as many of the forbidden things as the pleader chooses to include, using the conjunction "and" where the word "or" is used in the statute, and the count will not be void for duplicity, but the particular offense may be established at the trial of the case by proof of any one of the acts. *Stearns v. State,* 81 Md. 341, 345, 32 A. 282. Inasmuch as the state made allegations in this indictment sufficient to apprise the defendants of the offense with which they were charged, the trial court properly overruled the demurrer. *Miggins v. State,* 170 Md. 454, 458, 184 A. 911.

James H. Schneider, agent authorized by the Maryland Trust Company to lease the rooms in the Old Town Bank building, testified that the only one of the defendants who had a lease on a room in the building was Hubin, tenant of room 309. He declared that he was suprised to learn that any one had been using room 311, where the gambling paraphernalia was seized. It is an established principle that immunity from unlawful search and seizure is a privilege personal to those whose rights have been infringed, and only those who are lawful occupants of premises can object to search and seizure on those premises. *Frankel v. State,* 178 Md. 553, 562, 16 A. 2d 93.

It was testified by Raymond D. Menton, manager of the Chesapeake and Potomac Telephone Company, that there were ten telephone lines running into the two rooms on the day of the raid: six in room 309, and four in room 311. A contract for telephone service in room 311 was signed by Curtis Waldroup for the Manufacturer's Collection Agency. Objection was made to the introduction of evidence as to contracts signed by any one other than a defendant. We find no error in admitting this evidence inasmuch as its purpose was not to prove the contents of the contract, but merely to show the number of telephone lines running into the offices at the time of the raid. *Baum v. State,* 163 Md. 153, 160, 161 A. 244.

Objection was also made to the admission in evidence of race horse bets taken from Schussle at the police station. The law is settled in Maryland that if a misdemeanor is committed in the presence of a police officer, he may arrest the offender without first having obtained a warrant to do so, and upon making lawful arrest the officer may search the offender and seize any tangible evidence of the crime. In the case at bar the officers witnessed the commission of the crime. The race horse bets taken from Schussle shortly after his arrest were incriminatory papers and were admissible in evidence. *Silverstein v. State,* 176 Md. 533, 540, 6 A. 2d 465; *Romans v. State,* 178 Md. 588, 599, 16 A. 2d 642.

Vigorous dispute arose over the question whether the contents of the search warrant were admissible. It was contended that the raided rooms were located in a public office building and the gambling paraphernalia might reasonably have been seized without a search warrant. Neither the Federal Constitution nor the State Constitution forbids a search and seizure without a warrant. These instruments forbid unreasonable searches and seizures. The question is not whether the officer had a search warrant; it is whether the search and seizure were unreasonable. *United States v. McBride,* 287 Fed. 214, 216.

The gambling paraphernalia was properly admitted in evidence. The judge remarked in the presence of the jury: "My reason for admitting this is not because of any search warrant, good, bad or indifferent, but because of the fact that the evidence brought in was taken from a room where they had no more right to be than Lieutenant Amrein. That is my theory." The defendants objected to the judge's comment. While the jury in the trial of all criminal cases are the judges of the law as well as of fact (Md. Constitution, art. 15, sec. 5), the practice of the trial judges of giving advisory instructions in criminal prosecutions has long been sanctioned in this state. Advisory instructions may be given by the court of its own motion or at the request of either party, but the juries are not bound by them. If an instruction in a criminal case is erroneous, even though in a mere advisory form, it may be made the subject of an exception which can be considered by the Court of Appeals. *Beard v. State,* 71 Md. 275, 17 A. 1044, 4 *L. R. A.* 675, 17 *Am. St. Rep.* 536; *Klein v. State,* 151 Md. 484, 489, 135 A. 591; *Powell v. State,* 179 Md. 399, 18 A. 2d 587. The defendants were not prejudiced in the court below by the judge's explanation or statement of reason. After he had ruled many times on the admissibility of evidence, he told the jury at the close of the trial: "The Court instructs the jury that they are the judges of both the law and the facts * * * You are not to infer from any statements of the Court, made during the trial as to reasons why certain evidence has been admitted or rejected, that the Court has formed or expressed any opinion as to the guilt or innocence of the accused, as to the weight to be given to any evidence which has been admitted, or as to the law applicable to the offense charged. As to such matters, you are alone the judges." Even though the judge during the course of a criminal trial makes a statement in the presence of the jury concerning the law bearing upon a question before them, no reversible error is committed if the court informs the jury that his comments are merely advisory

and that the jury are the judges of both the law and the facts. *Simond v. State,* 127 Md. 29, 95 A. 1073.

As we find no error in the rulings of the court during the trial of this case, the judgment appealed from will be affirmed. We also affirm the action of the court in overruling the motion to quash the indictment.

*Judgment affirmed, with costs.*

*Order affirmed, with costs.*