McGUIRE et al. v. AMREIN et al.

BRATBURD et al. v. DAWSON et al.

Nos. 5527, 5592.

United States District Court
D. Maryland, Civil Division.

Nov. 29, 1951.

416

No. 5527.

Eldridge Hood Young, Baltimore, Md., for plaintiff McGuire.

Wilfred T. McQuaid, Baltimore, Md., for plaintiff Sody.

Schonfield & Schonfield, Eugene Schonfield, Wendell D. Allen, all of Baltimore, Md., for plaintiff Hess.

Maurice T. Siegel, Baltimore, Md., for plaintiff Silerman.

Alan H. Murrell, Baltimore, Md., for plaintiff Manger.

William Greenfeld, Baltimore, Md., for plaintiff Morgan.

Ellis Levin, Baltimore, Md., for plaintiff Major.

Hall Hammond, Atty. Gen., of Md., Kenneth C. Proctor, Asst. Atty. Gen., of Md., Anselm Sodaro, State's Atty., for Baltimore City, Wm. C. Rogers, Jr., Asst. State's Atty., for Baltimore City, of Baltimore, Md., for defendants.

No. 5592.

Paul D. Taggart, William R. Richards, Silver Springs, Md., for plaintiffs.

Hall Hammond, Atty. Gen., of Md., Kenneth C. Proctor, Asst. Atty. Gen., of Md., for defendants.

CHESNUT, District Judge.

In these two civil actions tried together the plaintiffs seek an injunction to prohibit the defendants from divulging the contents of telephone conversations learned by them by the tapping of telephone wires of the plaintiffs. The defendants are police officers of Baltimore City and of Montgomery County, Maryland, respectively. The complaints allege in substance that the police officers intercepted the telephone messages and have recordings thereof, and propose

to use them as evidence in criminal prosecutions against the plaintiffs in the respective cases now pending in the Criminal Court of Baltimore and in the Circuit Court for Montgomery County, Maryland, respectively, where they have been indicted for violation of the gambling laws of Maryland and conspiracy to violate the same. The answers of the defendants in both cases admit the interception of telephone conversations and the possession of recordings thereof and intention to use them in the criminal cases; but the answers deny the jurisdiction of this federal court to grant the relief prayed for. Counsel for the defendants also contend that even if the jurisdiction exists the situation does not warrant the exercise of the authority to issue an injunction because no property rights are involved and because in practical effect the issuance of the injunction would constitute an interference with State Court criminal jurisdiction contrary to the provisions of 28 U.S.C.A. § 2283 which provides—"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

At the outset it is necessary to examine the jurisdictional question. It is well known that federal courts have only limited jurisdiction and have no authority to adjudicate cases other than those authorized by the federal Constitution, implemented, with respect to courts other than the Supreme Court of the United States, by an Act of Congress. This district court, therefore, does not have jurisdiction unless it can be found that it has been affirmatively granted by Congress and is expressed in some federal statute. The plaintiffs contend and the defendants deny that such an affirmative grant is to be found in the present Judicial Code, 28 U.S.C.A. §§ 1331 and 1343(3). Section 1331 provides—"The district courts shall have original jurisdiction of all civil actions wherein the matter

in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States". The law of the United States relied on by the plaintiffs is the Federal Communications Act of 1934, 47 U.S.C.A. § 151 et seq., in which section 605 provides—"no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person". And section 501 of 47 U.S.C.A. provides the penalty for violation of section 605 to be a fine of not more than $10,000 or imprisonment of not more than 2 years or both. The statute does not expressly forbid the use of such intercepted messages as evidence in the federal courts but it has been determined by the Supreme Court of the United States that that is its legal effect. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Nardone v. United States, 308 U.S. 338,[1] 60 S.Ct. 266, 84 L.Ed. 307. But the Maryland Court of Appeals has held in three recent cases that the federal statute does not have the effect of forbidding the use of such intercepted messages as evidence in criminal cases in Maryland courts. Hitzelberger v. State, 174 Md. 152, 197 A. 605; Rowan v. State, 175 Md. 547, 3 A.2d 753; Leon v. State, 180 Md. 279, 23 A.2d 706.

28 U.S.C.A. § 1331 confers jurisdiction in the class of cases commonly referred to as federal questions; and a case involves a federal question when the construction and effect of some applicable federal statute is involved, because in that case it may be said to arise "under the Constitution, laws or treaties of the United States". We are not here concerned with the Constitution or a treaty but only with the particular federal statute which prohibits the tapping of telephones and disclosing the contents of messages and which the Supreme Court has held applies not only to interstate telephones but also to intrastate

---

1. The application and effect of the statute with respect to evidence in the federal courts was recently discussed in an opinion in this court in the case of United States v. Frankfeld et al., reported in the Baltimore Daily Record for October 24, and November 3, 1951. See also the same case in D.C., 100 F.Supp. 934.

telephones where the latter are used in connection with the former. Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298. The violation of the statute does not present a constitutional question because in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, the Supreme Court held that the tapping of telephone wires and the consequent overhearing of telephone messages and subsequent evidence thereof given in a criminal proceeding, did not constitute an unreasonable search and seizure or invasion of the defendant's privacy under the 4th Amendment to the Federal Constitution; and the receipt of such overheard messages was admissible in evidence under the principles of the common law. It was subsequent to that decision that Congress passed the Federal Communications Act of 1934.

The jurisdiction given to federal trial courts by section 1331 in a case involving a federal question was first enacted by Congress in 1875, prior to which time such questions were tried originally in the State courts; but when such jurisdiction was first given to the federal courts it was on the condition that there should be an amount in controversy which at that time was $500 but subsequently has been increased first to $2,000 and now to $3,000. The requirement with regard to the amount in controversy is obviously of great importance because otherwise the jurisdiction of the federal courts would be almost as wide as the whole field of federal statutory law. It is therefore very clear that the jurisdiction of federal questions as given by section 1331 does not exist unless there is an ascertainable amount in controversy in excess of $3,000 exclusive of interest and costs. Unless "the right or thing in controversy can in some fashion be translated into terms of money, there is no pecuniary amount in controversy". If it is impossible to assign a pecuniary value to the thing in controversy, jurisdiction does not exist. Rose on Federal Jurisdiction, 5th Ed. s. 211, p. 214; Ohlinger's Federal Practice, Rev.Ed. Vol. 1A, p. 36. In numerous cases involving suits for an injunction, there has been difficulty in determining what constitutes the amount in controversy

even where the case otherwise clearly deals with property rights; but in the instant case the injunction is not sought in relation to property rights at all. In my opinion it is impossible to find that there is any pecuniary amount at all in controversy in this case. Counsel for the plaintiffs have sought in a number of ways to show the existence of an amount in controversy exceeding $3,000. They point out that the amount of bail required from some of the plaintiffs in this case, who are defendants in the criminal cases, exceeds $3,000; and they also point out that in the last year or so there have been many convictions in the Criminal Court of Baltimore for violation of the gambling laws and that frequently fines of $1,000 have been imposed. They apparently intend to suggest that if each of the seven plaintiffs in one of the complaints is convicted and fined $1,000, the amount that will have resulted is more than $3,000. But if this point were otherwise material, it is well established that the pecuniary values in controversy with respect to several plaintiffs separately may not be aggregated for the purpose of showing an amount to exceed $3,000. It is also pointed out that the maximum penalty for violation of the Maryland gambling laws is a fine of $1,000 and possible imprisonment for one year, and for conspiracy the maximum fine would be $2,000 and some imprisonment. But I consider such evidence or arguments quite immaterial in this case and entirely insufficient to show that the controversy in this case has an assignable pecuniary value. Counsel for the plaintiffs have been unable to call to my attention any judicial decision which would support such a contention. Cross v. Burke, 146 U.S. 82, 13 S.Ct. 22, 36 L.Ed. 896; Central Mexico Light & Power Co. v. Munch, 2 Cir., 116 F.2d 85, are seemingly to the contrary. See also Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 594, 83 L.Ed. 1423.

Plaintiffs also assert and the defendants deny jurisdiction of this court under 28 U.S.C.A. § 1343, which reads— "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * *

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, *custom or usage*, of any right, privilege or immunity secured by the Constitution of the United States or by *any Act of Congress providing for equal rights of citizens* or of all persons within the jurisdiction of the United States." (Italics supplied.)

The jurisdiction thus conferred does not require the plaintiff to show any amount in controversy. It presents a federal question of a special class not included in the group of federal questions generally provided in section 1331. In the latter, the jurisdiction is conditioned upon the existence of an amount in controversy exceeding $3,000. But it will be noted that in succeeding sections, as for instance section.1336 and others, including section 1343, Congress has given jurisdiction to the federal district court in a number of particular federal questions arising under particular statutes, irrespective of any amount in controversy. Section 1343 is a reenactment of the Civil Rights statute, enacted by Congress shortly after the Civil War and intended more effectively to secure the civil rights granted by the 13th, 14th, and 15th Amendments to the Federal Constitution. See Rose on Federal Jurisdiction, s. 248, p. 240.

The defendants say that the facts of this case do not bring it within the scope of that section of the Civil Rights statute just quoted. More particularly they say that the interception of telephone messages was not done under color of any *custom or usage of the State of Maryland.* They also say that interception of such messages has not deprived the plaintiffs "of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for *equal rights of citizens* or of all persons within the jurisdiction of the United States". As we have seen, the question here involved is not a constitutional question but only arises out of a particular federal statute. It is also clear (and indeed the plaintiffs do not contend to the contrary) that the interception of messages was not under color "of any State law, statute, ordinance, regulation * * *". But the plaintiffs do contend that it was done under color of a State custom or usage.

The evidence in the case leaves room for doubt as to whether what was done by the police officers was done pursuant to a custom or usage of the State of Maryland. It is noted that the officers were acting as public officers in what they did. In the one case they were officers of the Baltimore City police force which, however, is an agency of the State of Maryland. And in the other case, the officers were duly appointed police officers of the County. They all acted in accordance with authority and instructions from their superior officers; but it also appears that there is no established police practice of intercepting telephone messages. While most of the police officers declined to testify as to details with regard to the tapping of wires involved in the particular case, such evidence as was given in the case supports a finding that it has only been in the last two or three years that the police have ever tapped telephone wires, and then in only 3 or 4 cases, mostly involving alleged viations of the gambling laws. Attention is also called to the fact that the Maryland criminal law, Maryland Code, Art. 27, § 579, makes it a misdemeanor punishable by a maximum penalty of $500 fine or one year's imprisonment or both, for "any person" to unlawfully and intentionally "injure, molest or destroy" telephone lines. See also Art. 27, § 580, and Art. 23, §§ 301, 302 and 304. It may be said in general that the law is clear enough that one may not establish a custom contrary to law; but again there may be doubt as to whether the Maryland statute against injuring, molesting or destroying telephone wires or other materials of a telephone company is sufficiently broad in language to clearly prohibit tapping a telephone wire, especially as section 580 of Art. 27 forbidding, under penalty, divulging the contents of private communications from telephone wires, applies only to employees of a telephone company operated for profit. Counsel for neither side has been able to refer to any federal judicial decision defining the scope of the phrase "custom or usage" as contained in this Civil Rights statute.

And I know of none. While I have considerable doubt whether the evidence in this case is sufficient to establish such a custom or usage, I will assume that the evidence can be regarded as sufficient to show that what was done by the defendants did amount to custom or usage, as it seems to be clear enough that whatever was done by the individual police officers was in accordance with their superior authority and it appears that by State judicial decision evidence so obtained by tapping telephone wires has been held admissible in criminal prosecutions in the State courts, although I do not understand the Maryland cases to imply that such actions are lawful.

 Nevertheless I do not conclude that this court has jurisdiction under 28 U.S.C.A. § 1343(3) because in my opinion no constitutional question is involved and the particular federal statute, 47 U.S.C.A. § 605, does not provide for the equal rights of citizens. As previously pointed out, the Civil Rights statute was passed by Congress to enforce particularly the 14th Amendment to the Federal Constitution. The words in the statute "equal rights" it seems, clearly refer to the provisions of the 14th Amendment which prohibits a State from denying to citizens and persons within its jurisdiction the equal protection of the laws. The historical background of the Civil Rights statute of 1871, now somewhat revised in phraseology as codified in the last edition of the Judicial Code, was considered in a number of opinions in the Supreme Court many years ago, and its application under more modern conditions has likewise been again considered by the Supreme Court in a number of cases; Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Screws v. United States, 325 U.S. 91, 65 S. Ct. 1031, 89 L.Ed. 1495; United States v. Williams, 341 U.S. 70, 71 S.Ct. 581, 95 L. Ed. 758; Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774; but none has been called to my attention by counsel, and I know of none, which would warrant the classification of the federal statute here in question, 47 U.S.C.A. § 605, as a statute passed for the protection of the equal rights of citizens or others. The statute was quite obviously passed in pursuance of the power delegated to Congress to regulate commerce and in its nature does not differ from many other penal statutes passed under like constitutional authority as, for instance, the interstate transportation of a known stolen automobile, or statutes passed pursuant to other constitutional authority such as misuse of the mails or embezzlement or theft of funds of a national bank.

 I conclude, therefore, that this suit must be dismissed for lack of jurisdiction. But even if the jurisdiction could be sustained there is another sufficient reason for refusing to issue the injunction prayed for. The issuance of an injunction is an extraordinary legal remedy. It does not issue as a matter of course but only as a matter of sound judicial discretion. While the facts may show that the plaintiff has a just complaint against the defendant for some unlawful or unauthorized conduct, it does not necessarily follow that an injunction will be issued against the defendant to enjoin further threatened illegal acts. The circumstances of any particular case may persuade the Chancellor that the issuance of the injunction may be too extreme a remedy. Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754; 43 C.J.S., Injunctions, § 14, p. 420.

 There are several important reasons in the instant case which persuade me that even if there were the power to issue an injunction it should not be exercised in this case. Equity deals ordinarily with property matters and there is no property right here involved. Again, a court of equity will not ordinarily enjoin a criminal prosecution; Ackerman v. International Longshoremen's & Warehousemen's Union, 9 Cir., 187 F.2d 860; Barrett v. Fish, 72 Vt. 18, 47 A. 174, 51 L.R.A. 754; Pomeroy's Equity Jurisprudence, Vol. 5, s. 2065, p. 4662, and particularly is this doctrine applicable where, as in the instant case, a federal court is asked in effect by its injunction to impair, if not in terms to enjoin, the effective prosecution of a criminal case in a State court. And indeed, as has been mentioned, a federal statute expressly

forbids a federal court to stay suits in a State court, with exceptions not relevant here. 28 U.S.C.A. § 2283. Harkrader v. Wadley, 172 U.S. 148, 19 S.Ct. 119, 43 L. Ed. 399; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L. Ed. 778. And, as we have seen, there is no constitutional question here involved. It is true that the plaintiffs do not ask an injunction in words to stay or impair the State prosecution against them but it is quite apparent that this is in effect their object. I know of no federal judicial authority which would warrant the issuance of an injunction by a federal court against testimony proposed to be given by a witness in a State criminal prosecution.

■ Nor does equity ordinarily enjoin the commission of a crime. It is contended by counsel for the plaintiffs that the defendants will be committing a crime if they divulge in their evidence as witnesses the contents of the intercepted telephone messages. On the other hand, counsel for the defendants contend that the words "no person" contained in the federal statute, 47 U.S.C.A. § 605, should not be held to apply to State police officers in the performance of their official duties. See Case v. Bowles, 327 U.S. 92, 98–100, 66 S.Ct. 438, 90 L.Ed. 552; Penn Dairies v. Milk Control Commission, 318 U.S. 261, 274–275, 63 S.Ct. 617, 87 L.Ed. 748. And counsel point out that the Supreme Court denied certiorari on the application of Leon v. State of Maryland, 180 Md. 279, 23 A.2d 706, certiorari denied under title of Neal v. State of Maryland, 316 U.S. 680, 62 S. Ct. 1107, 86 L.Ed. 1753. As Leon was convicted in the State court on evidence including intercepted telephone messages, and his conviction was affirmed by the Maryland Court of Appeals, counsel argue that the denial of certiorari by the Supreme Court justifies their inference that section 605 should be construed to have no application to State police officers acting otherwise in pursuance of lawful authority. But it is clearly not necessary to the disposition of the instant case to decide this point, nor appropriate to express any opinion thereon. All matters pertaining to the offer of such

evidence in the State court proceeding are obviously within the proper judicial province of the Maryland State Courts. See 37 Ill.Law Journal, 99; 32 Cornell Law Quarterly, 514; 33 Cornell Law Quarterly, 73.

For these reasons I conclude that the complaints in both cases must be dismissed with taxable costs allowed to the defendants.

Counsel may present the appropriate orders in due course.