BRATBURD ET AL. *v.* STATE
(Two Appeals in One Record)
[No. 160, October Term, 1951.]

*Decided May 8, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Paul D. Taggart*, with whom was *William R. Richards* on the brief, for the appellants.

*Kenneth C. Proctor, Assistant Attorney General*, with whom was *Hall Hammond, Attorney General, Walter W. Dawson, State's Attorney for Montgomery County*, and *Thomas M. Anderson, Deputy State's Attorney*, on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

These appeals were taken by Eddie Bratburd and Ruth E. Bratburd, his wife, residents of Silver Spring, from convictions for the possession of gambling paraphernalia in violation of the Montgomery County gambling law. Laws 1924, ch. 483, Montgomery County Code, 1950 Ed., sec. 50-3.

On June 27, 1951, Chief Judge Woodward of the Circuit Court for Montgomery County issued a search warrant commanding Corporal Watkins of the Montgomery County Police Department to seach Bratburd's home at 8869 Piney Branch Road for gambling paraphernalia as prohibited by Section 50-3 of the Montgomery County Code. The warrant was issued upon the officer's affidavit that, by means of wire tapping, he and other officers had overheard numerous conversations in which Brat-

burd had engaged in carrying on gambling operations. On the same day the officers raided the house, arrested Bratburd and his wife, and seized two adding machines, two telephones, 918 slips containing numbers bets, 648 slips containing gambling information, and other gambling paraphernalia.

Each appellant filed a motion to dismiss the action, but the motions were overruled. Appellants filed actions in the United States District Court for the District of Maryland for an injunction to prohibit the police officers from divulging the contents of the intercepted telephone conversations which they proposed to use as evidence in prosecutions. Judge Chesnut dismissed the complaints, holding that the Federal court was without jurisdiction to issue an injunction against testimony proposed to be given by witnesses in a State criminal prosecution. *Bratburd v. Dawson*, D. C., 101 F. Supp. 414.

The instant cases were tried separately by jury with Associate Judge Prescott presiding. In each case the jury found a verdict of guilty, and the Court sentenced each defendant to be confined in the Montgomery County jail for the period of six months and to pay a fine of $500.

*First.* Appellants contended that Section 50-7 of the Montgomery County Code, which prescribes that the penalty for violation of the local gambling law shall be a fine of not more than $1,000 or imprisonment in jail for not more than one year, or both such fine and imprisonment in the discretion of the Court, was repealed by the Montgomery County Charter, and that the sentences imposed upon them exceeded the maximum limits prescribed by law.

In pursuance of Article XIA of the Constitution of Maryland, known as the Home Rule Amendment, which was proposed by the Maryland Legislature in 1914, Laws 1914, ch. 416, and ratified by the voters of the State in 1915, the Legislature enacted in 1918 the Express Powers Act, which granted to any county which should thereafter form a charter under the provisions of Article

XI the power: (1) to enact local laws for such county, including the power to repeal or amend local laws enacted by the Legislature upon the matters covered by the express powers granted in the Act; and (2) to provide for the enforcement of all ordinances, resolutions, by-laws and regulations adopted under the authority of the Act by fines, penalties and imprisonment, enforceable according to law as may be prescribed, with the proviso that "no such fine or penalty shall exceed $100.00 for any offense or imprisonment for more than six months." Laws 1918, ch. 456, Code 1939, art. 25A, sec. 3.

The question of creating a Charter Board for Montgomery County was first presented to the electorate of the county at the general election in November, 1942. The Board was created and it submitted a Charter to the County Commmissioners of Montgomery County in May, 1943. That Charter failed of adoption at the general election in November, 1944. At the general election in November, 1946, the second Charter Board was created and it submitted a Charter to the County Commissioners in May, 1947. This Charter was adopted at the general election in November, 1948, and it became law on the thirtieth day following its adoption.

Montgomery County is the first county in the State to adopt a Charter under the provisions of the Home Rule Amendment. The Charter established a county government with local legislative power exercised by the County Council in place of the previous system of government by County Commissioners exercising no general legislative power. We have decided several problems arising out of the adoption of the Charter. *Schneider v. Landsdale,* 191 Md. 317, 61 A. 2d 671; *County Com'rs for Montgomery County v. Supervisors of Elections of Montgomery County,* 192 Md. 196, 63 A. 2d 735; *Ames v. Board of Supervisors of Elections of Montgomery County,* 195 Md. 543, 74 A. 2d 29.

Under the Charter the County Council has the power to enact public local laws for the county and to repeal or amend local laws enacted by the Maryland Legislature

upon the matters covered by the Express Powers Act. Charter, art. 2, sec. 4. The local gambling law has not been repealed by the County Council. But appellants argued that the Express Powers Act defined the scope of the legislative power of the County Council; and although the County Council may enact a local gambling law different from the public general law, no local law can validly prescribe maximum penalties greater than those prescribed by the Express Powers Act.

The Charter provides that the public local laws of the county in force at the time the Charter becomes law are repealed to the extent that they are clearly inconsistent with provisions of the Charter, but no further; and all other public local laws shall continue in full force and effect until repealed or amended. Charter, art. 9, sec. 6. However, we cannot agree with appellants that the local gambling law is inconsistent with the provisions of the Charter. The proviso in the Express Powers Act that no penalty shall exceed a fine of $100 or imprisonment for more than six months refers to "ordinances, resolutions, by-laws and regulations" adopted by the County Council and enforceable as may be prescribed by it. The proviso is a limitation upon the power of the County Council, not a restriction upon the Legislature. We hold that Section 50-7 is still in force.

*Second.* Appellants urged that the search warrant, which authorized a search for gambling paraphernalia "as prohibited by Section 50-3 of the Montgomery County Code," was invalid because it was issued by the Chief Judge of the Circuit Court, whereas Section 50-5 authorizes Justices of the Peace and the Clerk of the Circuit Court, but not Judges of the Circuit Court, to issue warrants for search of gambling paraphernalia in Montgomery County.

The answer to this complaint is that the Chief Judge of the Circuit Court has authority to issue search warrants under the Maryland search warrant statute. This statute, enacted in 1939, fifteen years after the enactment of the local law, authorizes any Judge of the

Supreme Bench of Baltimore City, or any Judge of any of the Circuit Courts in the Counties of this State, or any Justice of the Peace in this State, to issue a search warrant whenever it is made to appear, by a writing signed and sworn to by the applicant, that there is probable cause to believe that any misdemeanor or felony is being committed by any individual or in any place within the territorial jurisdiction of such Judge or Justice of the Peace, or that any property subject to seizure under the criminal laws of the State is located on the person of any such individual or in any such place. Laws 1939, ch. 749, Code 1939, art. 27, sec. 306, as amended by Laws 1950, ch. 81.

Therefore, although the warrant under attack was issued by the Chief Judge of the Circuit Court to authorize the search for gambling paraphernalia "as prohibited by Section 50-3 of the Montgomery County Code," and although Section 50-5 of that Code authorizes only Justices of the Peace and the Clerk of the Circuit Court to issue search warrants, yet the Chief Judge had authority to issue the warrant under the Maryland search warrant statute. It is not essential to the validity of a search warrant that it shall mention the particular statute by authority of which it is issued.

*Third.* Appellants contended that the facts alleged in the warrant were obtained by means of wire tapping; that the interception of the telephone communications was unlawful; that the gambling paraphernalia seized under the warrant were unlawfully obtained; and that the paraphernalia were inadmissible in evidence under the Bouse Act, which declares that no evidence in the trial of misdemeanors shall be deemed admissible where the same shall have been procured by, through, or in consequence of any illegal search or seizure. Code Supp. 1947, art. 35, sec. 5, as amended by Laws 1951, chs. 704, 710.

This contention also must be rejected. In 1928 the United States Supreme Court in its landmark opinion on wire tapping, *Olmstead v. United States*, 277 U. S.

438, 48 S. Ct. 564, 568, 569, 72 L. Ed. 944, 66 A. L. R. 376, decided that the guarantee in the Fourth Amendment against unreasonable search and seizure, while extending to sealed letters in the mail, does not extend to telephone and telegraph messages, and therefore the use of evidence of private conversations intercepted by means of wire tapping does not infringe any constitutional right. Chief Justice Taft clearly stated in the Court's opinion: "The Fourth Amendment may have proper application to a sealed letter in the mail because of the constitutional provision for the Post office Department and the relations between the Government and those who pay to secure protection of their sealed letters. * * * It is plainly within the words of the Amendment. to say that the unlawful rifling by a government agent of a sealed letter is a search and seizure of the sender's papers or effects. * * * The United States takes no such care of telegraph or telephone messages as of mailed sealed letters. The Amendment does not forbid what was done here. There was no searching. There was no seizure. The evidence was secured by the use of the sense of hearing and that only. There was no entry of the houses or offices of the defendants. * * * The language of the Amendment cannot be extended and expanded to include telephone wires reaching to the whole world from the defendant's house or office. The intervening wires are not part of his house or office any more than are the highways along which they are stretched. * * * Congress may of course, protect the secrecy of telephone messages by making them, when intercepted, inadmissible in evidence in federal criminal trials, by direct legislation, and thus depart from the common law of evidence. But the courts may not adopt such a policy by attributing an enlarged and unusual meaning to the Fourth Amendment."

The Chief Justice pointed out that the courts have no discretion to exclude evidence because secured unethically, in the absence of constitutional or statutory prohibition. "Our general experience," he said, "shows that

much evidence has always been receivable although not obtained by conformity to the highest ethics. The history of criminal trials shows numerous cases of prosecutions of oathbound conspiracies for murder, robbery, and other crimes, where officers of the law have disguised themselves and joined the organizations, taken the oaths and given themselves every appearance of active members engaged in the promotion of crime, for the purpose of securing evidence. Evidence secured by such means has always been received."

Appellants insisted that the admission of the gambling paraphernalia obtained as the result of wire tapping infringed Article 22 of the Maryland Declaration of Rights, which declares: "That no man ought to be compelled to give evidence against himself in a criminal case." They relied on the recent decision in *Rochin v. People of California,* 342 U. S. 165, 72 S. Ct. 205, 96 L. Ed. 154, wherein a doctor was directed to force an emetic solution by means of a tube into the stomach of the defendant, who was accused of possessing morphine, thereby producing vomiting, and in the vomited matter were two capsules which proved to contain morphine. In that case the Court held that the proceeding by the officers to obtain evidence violated the Due Process Clause of the Fourteenth Amendment. That case is quite different from wire tapping. For instance, in *Foley v. United States,* 5 Cir., 64 F. 2d 1, 4, Judge Sibley observed that the eavesdropping of Federal officers by tapping telephone wires is no worse than other eavesdropping. We reaffirm that the admission of evidence obtained as the result of the interception of telephone conversations by wire tapping is not a violation of Article 22 of the Maryland Declaration of Rights. *Rowan v. State,* 175 Md. 547, 559, 3 A. 2d 753.

Appellants placed reliance upon the Federal Communications Act of 1934. That Act provides that no person not authorized by the sender shall intercept any communication and divulge its contents to any person; and no person not entitled thereto shall receive any

interstate or foreign communication by wire or radio. 47 U. S. C. A. sec. 605.

It was held by the United States Supreme Court in *Nardone v. United States,* 302 U. S. 379, 58 S. Ct. 275, 82 L. Ed. 314, that the Federal Communications Act prohibits any person from testifying in a Federal criminal trial as to an interstate message overheard by means of wire tapping. But the Act expressly declares that its provisions shall apply to interstate and foreign communications by wire or radio. 47 U. S. C. A. secs. 151, 152. The Act does not render inadmissible in a trial in a State court any evidence secured as a result of wire tapping of an intrastate telephone communication. *Hitzelberger v. State,* 174 Md. 152, 168, 197 A. 605; *Rowan v. State,* 175 Md. 547, 560, 3 A. 2d 753; *Leon v. State,* 180 Md. 279, 284, 23 A. 2d 706, *certiorari* denied, *Neal v. State of Maryland,* 316 U. S. 680, 62 S. Ct. 1107, 86 L. Ed. 1753; *People v. Kelley,* Cal. App., 122 P. 2d 655, 659, aff'd 22 Cal. 2d 169 137 P. 2d 1; *Valli v. United States,* 1 Cir., 94 F. 2d 687, 691.

As appellants failed to show that the search warrant issued in this case was invalid, the evidence seized under it was properly admitted by the trial Court. The judgments of conviction will therefore be affirmed.

*Judgments affirmed, with costs.*