## McGUIRE *v.* STATE
[No. 7, October Term, 1952.]

602

*Decided November 11, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Eldridge Hood Young* for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City, William H. Maynard, Deputy State's Attorney,* and *William C. Rogers, Jr., Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant in this case was convicted by a jury in the Criminal Court of Baltimore on the second count of an indictment charging conspiracy with one Morton J. Hess to violate the "laws of the State of Maryland relating to lotteries." In his argument in this Court the appellant attacked the validity of the indictment, on the grounds that it was fatally defective in not specifying the acts constituting a violation of the lottery laws, and that a charge of conspiracy will not lie where concert is necessary to the offense. Both of these points

have been fully considered in the case of *Hurwitz v. State*, 200 Md. 578, 92 A. 2d 575, just decided, and for the reasons there stated we find no merit in these contentions. The other questions raised relate to the admissibility of evidence of telephone conversations obtained by wire tapping and the stenographic transcript thereof, and evidence consisting of certain admissions by the accused and lottery paraphenalia seized in Washington, D. C.

It appears from the testimony that on Saturday, June 9, 1951, Lieutenant Amrein and Officer Glass of the Baltimore City Police Department tapped the telephone line leading into the premises 1402 West Baltimore Street (Gilmor 0914), listed in the name of Mrs. Myrtle Hess. Morton J. Hess, appellant's co-defendant, owned and operated a confectionery and delicatessen store at that location. The officers overheard a person who said he was Hess discussing bets and lottery numbers with other persons. Thereafter, the officers rented an apartment near the premises, installed a recording machine, and recorded conversations on June 11th, 12th and 13th. The officers listened to the conversations recorded by means of ear-phones. On June 13th, Officer Glass went to the store and talked to Hess in person under the guise of making purchases.

Among the conversations recorded was a conversation on June 11, 1951, from Gilmor 0914 to Randolph 4037, a number listed to one Cassell in Room 424, Crestwood Apartments, 3900 16th Street, N. W., Washington, D. C. Hess talked to a man he called "Mick" or "Mack" and "laid off" certain numbers on which Hess had "taken play". In other words, as explained by the witnesses, Hess made arrangements with the person in Washington for the latter to underwrite certain bets taken in Baltimore by Hess. There were other calls to this number, all of which were verified as to time and dates by an official of the telephone company. On June 15 the officers obtained a warrant to search Hess's store, but nothing incriminating was found in this search, nor did Hess

make any damaging admissions in a rather lengthy conversation with the officers.

On June 25, 1951, the officers went to Washington and to the Crestwood Apartments accompanied by two Washington police. They learned from the manager that four apartments, numbers 424, 426, 429 and 430 had been rented by a Mr. Rosenthal, as agent for Senator Madragal of the Phillippines. Rosenthal came to the door of 429 in response to their knock. They learned that the telephone in 424 had been removed. The door to 430 was locked, but the manager opened it at their request; the appellant was found hiding in the bathroom. He said he had come to the apartment to rest, and that "some man" had given him the key. He denied that he paid rent for the apartment and also denied that he knew Rosenthal. Both Rosenthal and the manager denied that they had ever seen McGuire before. On the table in the room, in plain view, were a large number of lottery slips and tally sheets. The name of Hess appeared on at least one of these sheets. The appellant admitted that the entries were in his handwriting. He admitted that he knew Hess and had visited him in Baltimore. Lieutenant Amrein told McGuire "he could either go with the Washington authorities or he could come to Baltimore with us". After talking privately with Rosenthal, the appellant agreed to go to Baltimore. At Baltimore he made a statement, and was then placed under arrest.

The appellant contends that there was no sufficient identification of the voice of McGuire, as heard by the officers making the wire tap and recorded on the machine. At that time, of course, neither of the officers had ever seen McGuire, but Officer Glass testified at the trial, after the conversations with him on June 25, that he recognized his voice and that he was the same person who talked to Hess on several prior occasions answering to the name of "Mack". It may be noted that the officer not only heard these conversations through earphones, but heard the record played back at the time

it was transcribed. It is quite immaterial that he heard McGuire in person after having heard his voice on the telephone, rather than before. At the time of the trial he was in a position to make the comparison and his testimony was clearly admissible. *Lenoir v. State,* 197 Md. 495, 504, 80 A. 2d 3, 7; *Rowan v. State,* 175 Md. 547, 558, 3 A. 2d 753; *Wigmore, Evidence* (3d ed.) § 2155 (a). Both officers testified that they identified Hess as the person taking and placing bets on the phone and this identification is not challenged.

We find no error in the admission in evidence of the stenographic transcript of the recording. If we assume that the recording tape would have been the best evidence of the conversations, it was explained that the machine had been repaired and after repair the tape could not be replayed so as to reproduce the conversations. Under the circumstances secondary evidence would seem to be in order. Cf. *Barranco v. Kostens,* 189 Md. 94, 97, 54 A. 2d 326. In any event the officers could use the transcript, as they did, to refresh their independent recollection of the conversations they heard at the time they were recorded and at the time they were transcribed. *Mercantile Trust & Deposit Co. v. Rode,* 137 Md. 362, 373, 112 A. 574.

The contention that these conversations were inadmissible because obtained by wire tapping, was fully discussed in the recent case of *Bratburd v. State,* 200 Md. 96, 103-106, 88 A. 2d 446, 449 et seq. See also *Leon v. State,* 180 Md. 279, 284, 23 A. 2d 706, *certiorari denied* 316 U. S. 680, 62 S. Ct. 1107, 86 L. Ed. 1753. It was there held, in the light of the relevant federal and state decisions, that the use of such evidence was not precluded by the Fourth Amendment to the Federal Constitution or by the 22nd Article of the Maryland Declaration of Rights. It was also held that the Federal Communications Act of 1934 (47 U. S. C. A., § 605) had no application to an intrastate telephone communication, and that the Bouse Act, 1951 Code, Article 35, Section 5 was likewise inapplicable. Following earlier

decisions it was held that evidence is admissible even though it may have been illegally obtained. The appellant contends that the instant case is distinguishable because the tap intercepted an interstate call. It should be noted, however, that the federal statute, as construed by the Supreme Court in *Weiss v. U. S.*, 308 U. S. 321, 329, 60 S. Ct. 269, 84 L. Ed. 298, applies to both interstate and intrastate communitations. Evidence obtained by wire tapping has been held admissible in State prosecutions, not because the federal statute is limited to interstate communications, but because it is "presumed to be limited in effect to the federal jurisdiction and not to supersede a state's exercise of its police power unless there be a clear manifestation to the contrary". *Harlem Check Cashing Corp. v. Bell,* 296 N. Y. 15, 68 N. E. 2d 854, 855; *People v. Stemmer,* 298 N. Y. 728, 83 N. E. 2d 141, affirmed by an equally divided court, 336 U. S. 963, 69 S. Ct. 936, 93 L. Ed. 1115, petition for rehearing denied, 337 U. S. 921, 69 S. Ct. 1153, 93 L. Ed. 1730. In the absence of a decision of the Supreme Court to the contrary, we adhere to the view that the evidence obtained by wire tapping in the instant case was admissible.

The appellant next contends that the evidence obtained in number 430 of the Crestwood Apartments was inadmissible under the Bouse Act, which makes inadmissible, in prosecutions for misdemeanors of the type in question, evidence "procured by, through or in consequence of any illegal search or seizure". If the incident had taken place in Maryland, it seems clear that the evidence would have been admissible on several grounds. While the police had no search warrant they were admitted to apartment number 430 by the manager for the landlord in the presence of, and with the tacit consent of, the lessee or his agent, Rosenthal. *Kershaw v. State,* 199 Md. 135, 138, 85 A. 2d 783, 785. It is also clear under the Maryland authorities that McGuire, as a mere interloper or at best a guest, claiming no interest in the premises, would have no standing to object to the

entry. *Saunders v. State,* 199 Md. 568, 572-573, 87 A. 2d 618, 620 and cases cited. Upon entry, the gambling paraphernalia were in plain view and no search was necessary. McGuire admitted that the entries were in his handwriting. Had the incident occurred in Maryland, the officers would have been justified in arresting McGuire and seizing the evidence of a crime committed in their presence.

It is contended, however, that the legality of the seizure depends upon the law of the place where made, rather than the law of the forum. If we assume, without deciding, that the Bouse Act is broad enough to cover seizures made outside the State, and that the principle stated is applicable, we do not find that the law of the District of Columbia is materially different from the law of Maryland as applied to the facts in the instant case. See *Shore v. U. S.,* 60 App. D. C., 137, 49 F. 2d 519, *certiorari denied* 283 U. S. 865, 51 S. Ct. 656, 75 L. Ed. 1469, (cited in *Saunders v. State, supra*) and *Gibson v. U. S.* 80 U. S. App. D. C., 81, 149 F. 2d 381, *certiorari* denied. *O'Kelly v. United States,* 326 U. S. 724, 66 S. Ct. 29, 90 L. Ed. 429. We do not understand that the principles that an entry by consent freely given is not illegal, and that an interest in the premises greater than that of a guest is prerequisite to a valid objection, are shaken by *McDonald v. U. S.,* 335 U. S. 451, 69 S. Ct. 191, 93 L. Ed. 153, or *U. S. v. Jeffers,* 342 U. S. 48, 72 S. Ct. 93. See also *U. S. v. Blok,* 88 U. S. App. D. C. 326, 188 F. 2d 1019. It is true that the Baltimore police would have had no authority to arrest McGuire for a crime committed in Washington. But the evidence in plain view after the lawful, or at least unobjectionable, entry, tended to show that McGuire was not merely engaged in an activity which may have been in violation of the laws of the District of Columbia, but that he was engaged in an interstate conspiracy to violate the Maryland law by participating in a Maryland lottery operation. Cf. *Bloomer v. State,* 48 Md. 521, 535. Under the circumstances we cannot find that the

seizure of the evidence was unlawful. Moreover, McGuire was not arrested at that time; the testimony is clear that he agreed to accompany the officers to Baltimore rather than to remain in Washington and perhaps face charges there and eventual extradition. Even if the action of the police in taking McGuire to Baltimore could be held to be unlawful, such fact would not affect the jurisdiction of the Maryland court or vitiate his indictment and trial. *Davis v. Brady*, 188 Md. 113, 51 A. 2d 827; *Rigor v. State*, 101 Md. 465, 61 A. 613. See also note 165 A. L. R. 948. There is no merit in the contention that the statements made by McGuire in Washington and in Baltimore were not voluntary. There is no evidence that he was forced or improperly induced to make them. In any event, they did not amount to confessions, but were merely admissions tending to connect him with the operation conducted by Hess in Baltimore. Cf. *Delnegro v. State*, 198 Md. 80, 87, 81 A. 2d 241, 245. Finding no error in the admission of any of the evidence challenged, it was legally sufficient to sustain the verdict.

*Judgment affirmed, with costs.*