Grant Agbara Lewis v. State of Maryland, No. 61, September Term, 2016

**MARYLAND UNIFORM ACT TO SECURE ATTENDANCE OF WITNESSES FROM WITHOUT STATE IN CRIMINAL PROCEEDINGS – MD. CODE ANN., CTS. & JUD. PROC. (1973, 2013 REPL. VOL.) § 9-304(a) – WAIVER OF ISSUE AS TO VIOLATION –** Court of Appeals held that out-of-State witness who enters Maryland to testify at trial in criminal case pursuant to summons under Maryland Uniform Act to Secure Attendance of Witnesses from Without State in Criminal Proceedings, and who is arrested and charged with crime in Maryland, waives issue as to violation of Md. Code Ann., Cts. & Jud. Proc. (1973, 2013 Repl. Vol.) § 9-304(a) by failing to raise issue pretrial as required by Maryland Rule 4-252, which governs mandatory pretrial motions and matters that are capable of determination before trial, without trial of general issue. Court of Appeals declined to exercise discretion pursuant to Maryland Rule 8-131(a) to review matter.

Circuit Court for Baltimore County
Case No. 03-K-14-001586

Argued: March 2, 2017

No. 61

September Term, 2016

_____

GRANT AGBARA LEWIS

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: April 24, 2017

The Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings authorizes a Maryland trial court to certify that a person outside Maryland is a material witness in a pending criminal case in Maryland, and directs that such a certification be presented to a judge in another State. See Md. Code Ann., Cts. & Jud. Proc. (1973, 2013 Repl. Vol.) ("CJ") § 9-303(a).[1] A provision of the Act, CJ § 9-304(a), provides for exemption[2] from arrest or service of process for such an out-of-State witness as follows:

> *Exemption of person coming into State to attend and testify.* — If a person comes into this State in obedience to a summons directing him [or her] to attend and testify in this State he [or she] shall not while in this State pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his [or her] entrance into this State under the summons.

This case requires us to determine whether an out-of-State witness who enters Maryland pursuant to a summons, and is then charged with crimes, waives the issue of a violation of CJ § 9-304(a) by failing to raise the issue before trial.

Here, Grant Agbara Lewis ("Lewis"), Petitioner, a Colorado resident, entered

---

[1]CJ § 9-303(a) states in pertinent part:

If a person in any [S]tate, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions . . . in this State, is a material witness in a prosecution pending in a court of record in this State, . . . a judge of the court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. . . . This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

[2]In their briefs, the parties state that CJ § 9-304(a) provides for "immunity." In State v. Breeden, 333 Md. 212, 224, 634 A.2d 464, 470 (1993), this Court stated: "[CJ] 9-304 grants the witness **exemption** from arrest and service of process." (Emphasis added). For consistency with our case law, we use the term "exemption."

Maryland pursuant to a summons to testify at the murder trial of Alexander Bennett ("Bennett"). On the day that his trial was scheduled to begin, Bennett entered into a guilty plea agreement, pursuant to which he made a proffer inculpating Lewis in the murder of Heidi Bernadzikowski ("Bernadzikowski"). Afterward, Lewis was arrested in Maryland and, in the Circuit Court for Baltimore County ("the circuit court"), the State, Respondent, charged Lewis with crimes that were related to the murder.

At no point did Lewis assert the issue of a violation of CJ § 9-304(a) in the circuit court. Instead, Lewis raised the issue for the first time on appeal. The Court of Special Appeals held that Lewis waived any issue as to a violation of CJ § 9-304(a). We agree, and hold that an out-of-State witness who enters Maryland to testify at a trial in a criminal case pursuant to a summons under the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, and who is arrested and charged with a crime in Maryland, waives the issue of a violation of CJ § 9-304(a) by failing to raise the issue pretrial as required by Maryland Rule 4-252, which governs mandatory pretrial motions and matters that are capable of determination before trial, without trial of the general issue. We decline to exercise our discretion pursuant to Maryland Rule 8-131(a) to review the matter.

## BACKGROUND

### State v. Bennett and Filings in the Colorado Court

The facts and circumstances giving rise to this unusual case are summarized below. In the circuit court, the State charged Bennett with first-degree murder of Bernadzikowski and other crimes. In State v. Bennett, the State filed an "Application to Secure Attendance

- 2 -

of a Person Outside the State as a Witness in a Criminal Action in the State" under CJ § 9-303, seeking to secure the attendance of Lewis, a Colorado resident, as a witness at Bennett's trial. The circuit court issued a "Certificate for Attendance of Witness from Colorado State," certifying that Lewis was a material witness in State v. Bennett.

In the District Court of City and County of Denver, Colorado ("the Colorado court"), the District Attorney for the Second Judicial District of Colorado filed a "Motion for Hearing and Appearance of Witness for Witness To Testify in Another State," advising the Colorado court of the attempt to secure Lewis's presence as a witness in Maryland and noting that, under Colorado law, Lewis had a right to a hearing to determine whether he was a material and necessary witness in State v. Bennett and whether it would cause undue hardship to be compelled to testify at Bennett's trial. In the motion, the District Attorney stated that Lewis would be required to attend Bennett's trial for two days, and possibly afterward if the circuit court so ordered; and the District Attorney requested that the Colorado court issue a summons ordering Lewis to testify at Bennett's trial.

The Colorado court issued an "Order for Hearing and Appearance of Witness, and for Contingent Summons for Witness to Testify in Another State[.]" In the order, the Colorado court scheduled a hearing, at which Lewis would be required to show cause why he should not be compelled to testify at Bennett's trial; and ordered that the show cause hearing would be vacated if the District Attorney filed an Acceptance of Service and Waiver of Hearing signed by Lewis. The Colorado court found that Lewis was a material and necessary witness in State v. Bennett, and that compelling Lewis to testify at Bennett's trial would not cause undue hardship. The Colorado court ordered Lewis to testify at

Bennet's trial and stated:

> [T]he laws of the [S]tate in which the prosecution is pending, and of any other [S]tate through which [Lewis] may be required to pass by ordinary course of travel, will give to [Lewis] protection from arrest and service of civil and criminal process in connection with matters which arose before entering into that [S]tate under this summons[.]

In the Colorado court, the District Attorney Investigator filed a "Certificate of Service," averring that he had served on Lewis, among other documents, the Motion for Hearing and Appearance of Witness for Witness To Testify in Another State, the Order for Hearing and Appearance of Witness, and for Contingent Summons for Witness to Testify in Another State, the Application to Secure Attendance of a Person Outside the State as a Witness in a Criminal Action in the State, and the Certificate for Attendance of Witness from Colorado State.

In the Colorado court, Lewis filed an "Acceptance of Service and Waiver of Hearing," in which he acknowledged service of the above-listed documents, waived his right to a show cause hearing, and agreed to testify at Bennett's trial. On March 18, 2014, the day on which Bennett's trial was scheduled to begin, Bennett pled guilty in exchange for a sentence of life imprisonment with all but thirty years suspended. On the same day, Bennett agreed to testify about his involvement in the murder and made a proffer in which he implicated Lewis as an accomplice to Bernadzikowski's murder. On March 19, 2014, after an investigation, Lewis, who had been in Maryland to testify against Bennett, was arrested. At the time of his arrest, Lewis did not assert the exemption from arrest under CJ § 9-304(a).

**Circuit Court Proceedings in <u>Lewis v. State</u>**

In the circuit court, the State charged Lewis with first-degree murder of Bernadzikowski and conspiracy to commit first-degree murder of Bernadzikowski. The evidence adduced at trial showed that Bennett and Lewis had been childhood friends in Colorado and attended the Denver School of Performing Arts together. In 2000, the two devised a plan to make money that involved placing online advertisements for "cleaning services," a cover term for contract killings. According to Lewis, the pair planned to defraud potential customers by taking money and not actually performing any murders. By contrast, according to Bennett, there was no intent to deceive; he and Lewis intended to commit murder in exchange for payment.

Specifically, at trial, as a witness for the State, Bennett testified that Lewis was responsible for designing and placing the online advertisement. In or before Spring 2000, as a result of the internet advertisement, Stephen Cooke ("Cooke"), a man living in Dundalk, Maryland contacted Lewis and requested a contract killing of Bernadzikowski, who was his roommate and girlfriend, for $60,000.[3] Cooke wanted Bernadzikowski's death to look like an accident so that he would be able to collect the proceeds from an insurance policy on Bernadzikowski's life. Cooke provided his address to Lewis, who gave Bennett a map from Baltimore/Washington International Airport[4] ("BWI") to

---

[3]In 2015, Cooke was convicted of first-degree murder, conspiracy to commit first-degree murder, and solicitation to commit first-degree murder.

[4]In 2005, Baltimore/Washington International Airport was renamed Baltimore/Washington International Thurgood Marshall Airport. <u>See</u> Maryland Aviation Administration, BWI Timeline, http://www.bwiairport.com/en/about-bwi/bwi-timeline/ [https://perma.cc/T7Z5-8JEL].

Cooke's and Bernadzikowski's house. Natalie Ott ("Ott"), one of Bennett's high school classmates, drove him and Lewis to an airport in Colorado. Using a ticket that Lewis had bought, Bennett flew from Colorado to BWI. Because he had no money, Bennett started walking from BWI to Dundalk. While Bennett was walking along a highway, a law enforcement officer stopped him. Bennett told the law enforcement officer that he was stranded, and the officer gave him a ride to Dundalk.

Bennett stayed in Dundalk for weeks, stealing food and sleeping at a bus stop, in a van, or wherever else he could find a place to sleep. Two or three times a day, Bennett called Lewis via pay phones, asking whether Cooke had e-mailed Lewis, or whether Lewis had any information to share. One day, Cooke e-mailed Lewis to arrange a meeting with Bennett. At the meeting, Cooke told Bennett that, at some point, he would leave a key outside the house so that Bennett could enter the house and kill Bernadzikowski. On another day, Cooke and Bennett met again; Bennett asked for an up-front payment; and Cooke said that he would not have any money until he collected the proceeds from the insurance policy on Bernadzikowski's life.

A day or two after Cooke's and Bennett's second meeting, Bennett telephoned Lewis, who said that Cooke had e-mailed him, stating that he would drop off Bernadzikowski in about twenty minutes and that a key was outside of the house. Bennett went to Cooke's and Bernadzikowski's house, found the key, entered the house, and waited. Within three or four minutes, through the window, Bennett saw Cooke drive up outside the house, and saw Bernadzikowski get out of the car. Bennett waited behind the front door. Bernadzikowski entered the house, and Bennett put his hand over her mouth

- 6 -

and unsuccessfully tried to break her neck. Then, Bennett put his hand around Bernadzikowski's throat and started choking her. Bernadzikowski struggled and scratched Bennett's face, but she eventually became unconscious. To make sure that Bernadzikowski was dead, Bennett cut her throat with a knife.

To make it seem as though a burglary had occurred, Bennett went upstairs and ransacked the bedroom. To confuse law enforcement officers, Bennett used Bernadzikowski's lipstick to write "Number 1" on the wall. Bennett waited approximately thirty to thirty-five minutes, left the house, and threw the key and knife into a dumpster. Bennett telephoned Lewis and informed him that he had killed Bernadzikowski. Lewis told Bennett that he was using a satellite to ensure that no law enforcement officers were in the area. After returning to Colorado, Bennett told Lewis about the killing in more detail. According to Bennett, Cooke never paid him, and Bennett and Lewis had never discussed simply stealing money from Cooke without killing Bernadzikowski.

As a witness for the State, Sergeant Alan Meyer ("Sergeant Meyer") of the Baltimore County Police Department testified that, on April 20, 2000, Sergeant Meyer responded to 2008 Codd Avenue in Dundalk to investigate Bernadzikowski's death. An investigation revealed that Bernadzikowski's boyfriend, Cooke, had taken out a $700,000 insurance policy on Bernadzikowski's life, and that she was preparing to end their relationship. At the time of the initial investigation, DNA tests conducted on Bernadzikowski's fingernail clippings revealed DNA belonging to Bernadzikowski and an unknown individual.

Years later, in September 2011, after advances in DNA technology, DNA testing

of Bernadzikowski's fingernails revealed that the DNA profile of the previously unknown individual matched Bennett, causing him to become a suspect. Additionally, Sergeant Meyer learned that, on March 30, 2000, a Maryland State Trooper had stopped Bennett while he was walking toward I-895. Sergeant Meyer traveled to Colorado, interviewed Bennett, and obtained Lewis's name from Bennett. Sergeant Meyer believed Lewis to be a witness and interviewed him in Colorado on four separate occasions. On January 19, 2012, Bennett was arrested.

As a witness for the State, Ott, Bennett's high school classmate, testified that Bennett and Lewis were best friends. In Spring 2000, Ott drove Bennett and Lewis to Denver International Airport. On the way, Bennett said that he and Lewis were two of the biggest members of organized crime in Colorado; that Bennett was going to Baltimore to do a job; and that he and Lewis were going to make a lot of money.

As a witness for the State, Rebecca Love ("Love"), the mother of Lewis's two children, testified that, in Spring 2000, while she and Lewis were in her apartment, Lewis told her that an out-of-State woman owed him money and had "reneged[,]" and that he had sent Bennett to kill her while he watched on his computer via satellite. Love ran out of her apartment and cried. Lewis followed Love and told her that he had made up the planned killing to impress her.

As a witness on his own behalf, Lewis testified that he and Bennett developed a "silly scam" in which they would accept money for contract killings without following through. Lewis acknowledged that he created an online advertisement for "professional and discreet cleaning services," and that in response to the online advertisement, Cooke

- 8 -

offered to pay $20,000 up front, and another $20,000 upon completion, for a contract killing of Bernadzikowski. Cooke e-mailed Lewis to provide his and Bernadzikowski's address, and Bennett flew to Baltimore, where he was supposed to collect the up-front payment from Cooke. Once Bennett was in Baltimore, over time, Lewis heard from Bennett and Cooke that Cooke wanted to lower the amount that he would pay up front, and eventually that Cooke wanted to cancel the contract killing. Lewis also heard from Bennett that he accosted and threatened Cooke, who then agreed to proceed with the contract killing. After Bennett returned to Colorado, he told Lewis that he had entered Cooke's and Bernadzikowski's house, where he planned to extort money from Cooke. According to Lewis, Bennett said that, after Bernadzikowski entered the house instead, Bennett panicked and killed her. Lewis testified that he was "horrified at what had transpired[,]" that he had never intended to carry out a murder, and that he had never believed that Bennett would do so. Lewis denied having told anyone else about his and Bennett's scam.

A jury found Lewis guilty of first-degree murder of Bernadzikowski and conspiracy to commit first-degree murder of Bernadzikowski. The circuit court sentenced Lewis to life imprisonment for first-degree murder, and five concurrent years of imprisonment for conspiracy to commit first-degree murder. Lewis noted an appeal.

Lewis did not allege, pretrial or during trial, that his arrest violated the Maryland Uniform Act to Secure the Attendance of Witnesses from Without State in Criminal Proceedings.

**Subsequent Procedural History**

On appeal, for the first time, Lewis raised the exemption from arrest under CJ § 9-

304(a). Specifically, before the Court of Special Appeals, Lewis contended that the State's prosecution of him violated CJ § 9-304(a), and argued that, accordingly, the circuit court lacked subject-matter jurisdiction and improperly exercised personal jurisdiction over Lewis.

The Court of Special Appeals disagreed and affirmed the convictions, holding that the circuit court had subject matter jurisdiction and properly exercised personal jurisdiction. See Lewis v. State, 229 Md. App. 86, 101, 143 A.3d 177, 186-87 (2016). Specifically, the Court of Special Appeals concluded that the circuit court had subject matter jurisdiction because Bernadzikowski's body had been found in a residence in Dundalk, Maryland. See id. at 101, 143 A.3d at 186. The Court of Special Appeals held that an alleged violation of CJ § 9-304(a) does not result in a lack of subject matter jurisdiction, and that the alleged violation is subject to Maryland Rule 4-252, and is waived if not raised in a timely manner. See id. at 107-08, 143 A.3d at 190. The Court of Special Appeals held that the circuit court had personal jurisdiction over Lewis because "[Lewis] was served in the State, and thus, the State acquired personal jurisdiction over him." Id. at 103, 143 A.3d at 188. The Court concluded that Lewis's challenge to the exercise of personal jurisdiction was waived. See id. at 103, 108, 143 A.3d at 188, 190. The Court of Special Appeals determined that the issue was whether, in light of the alleged violation of CJ § 9-304(a), personal jurisdiction should have been exercised. See id. at 103, 143 A.3d at 188. The Court of Special Appeals concluded that "it is settled that the defense of lack of personal jurisdiction, unlike subject matter jurisdiction, is waived unless raised in a mandatory preliminary motion[.]" Id. at 103, 143 A.3d at 188 (citation, brackets, and

internal quotation marks omitted).

Lewis filed a petition for a writ of *certiorari*, which this Court granted.  See Lewis v. State, 450 Md. 420, 149 A.3d 547 (2016).

## DISCUSSION

### The Parties' Contentions

Lewis contends that the circuit court improperly exercised personal jurisdiction over him in violation of CJ § 9-304(a), which provides that a person who comes into the State on an out-of-State summons shall not be subject to arrest or the service of process in matters that arose before his or her entrance into the State.[5]  Lewis argues that, as such, his convictions should be vacated and he should be allowed to return to Colorado, at which point Maryland may elect to initiate extradition proceedings against him.  Lewis acknowledges that a court's ability to exercise personal jurisdiction over a criminal defendant is not generally affected by the manner in which a defendant is brought into court.  Lewis asserts, however, that the Doctrine of Specialty—which provides that a court cannot exercise personal jurisdiction over a person who is extradited to the United States for an offense that is not specified in the demand for surrender of the person—is an exception to the general rule, and applies in this case.  Lewis maintains that, like the Doctrine of Specialty in extradition matters, CJ § 9-304(a) prevents the circuit court from exercising personal jurisdiction over him for any matter other than the purpose for which he was brought to Maryland.

---

[5]Before us, Lewis does not contend that the circuit court lacked subject-matter jurisdiction.

- 11 -

Lewis concedes that he did not preserve the issue as to the alleged violation of CJ § 9-304(a) for appellate review, but asks us to exercise our discretion under Maryland Rule 8-131(a) to review the unpreserved issue because of this case's "extraordinary circumstances." Lewis contends that both the prosecutor and circuit court were or should have been aware that his prosecution violated CJ § 9-304(a), and that the circuit court and the State had a substantial opportunity to correct the error. Lewis argues that the purpose of fairness in judicial proceedings would be furthered by this Court exercising its discretion to review the matter, and that addressing the issue would avoid the expense and delay of another appeal.

As to the merits, Lewis argues that an out-of-State witness does not waive the issue of a violation of CJ § 9-304(a) by failing to file a pretrial motion under Maryland Rule 4-252 (Motions in Circuit Court). Lewis points out by analogy that an implicit waiver is not permitted under Maryland's extradition laws, which require an express waiver of the right to challenge extradition. Lewis asserts that permitting an implicit waiver under CJ § 9-304(a) would permit the circumvention of an explicit waiver that would be required to extradite him from Colorado. Lewis maintains that a waiver of the issue as to a violation of CJ § 9-304(a) should be the same as the general requirement for a waiver of extradition—the waiver must occur in open court, before a judge, and after an advice of the right to challenge extradition. According to Lewis, permitting an implicit waiver would render trial courts "unaccountable" for violations of CJ § 9-304(a). Lewis contends that, in this case, although there is no evidence of bad faith on the circuit court's part, there is an appearance of impropriety because the same circuit court judge issued the Certificate

for Attendance of Witness from Colorado State and presided over his trial.

The State responds that Lewis forfeited the ability to challenge his arrest and prosecution by failing to raise the issue in a pretrial motion pursuant to Maryland Rule 4-252. The State contends that a challenge to a trial court's personal jurisdiction over a defendant falls under "[a] defect in the institution of the prosecution" under Maryland Rule 4-252(a)(1), and thus must be the subject of a mandatory motion. The State argues that Maryland Rule 4-252 requires a defendant—not the State or a trial court—to raise an issue as to a violation of CJ § 9-304(a) before trial, or the issue is waived. The State asserts that a knowing and voluntary waiver is not required under CJ § 9-304(a). The State maintains that the analogy to waiver under extradition laws is misplaced because: (1) the procedure to protect an out-of-State witness is not comparable to the procedure to protect the rights of a defendant who has already been charged with a crime; (2) errors in the extradition process that are not timely raised are forfeited without a knowing and voluntary waiver; and (3) Maryland Rule 4-252 does not require a knowing and voluntary waiver.

The State contends that Lewis fails to demonstrate that this Court should exercise its discretion to review his unpreserved challenge to his arrest and prosecution, as doing so would not correct a recurring error, provide guidance where there is likely to be a new trial, or offer assistance if there is a subsequent collateral attack on the convictions. The State argues that it would be unfair to allow Lewis to raise an issue as to a violation of CJ § 9-304(a) for the first time on appeal, as he could have known of the issue, yet decided not to raise it before trial. The State points out that, had Lewis raised the issue of a violation of CJ § 9-304(a) before trial and been permitted to return to Colorado, the State could have

- 13 -

immediately sought to extradite him.

## The Standard of Review

"An appellate court reviews without deference a trial court's interpretation of a statute[.]" Howard v. State, 440 Md. 427, 434, 103 A.3d 572, 576 (2014) (citations omitted). And, generally, an appellate court reviews questions of law without deference. See State v. Callahan, 441 Md. 220, 226, 107 A.3d 1143, 1146 (2015) ("[W]hether the probationer violated the order of probation is a purely legal issue[, and] the appellate court reviews without deference the trial court's determination that the probationer violated the order of probation." (Citation omitted)).

## CJ § 9-304(a)

CJ § 9-304(a), part of the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, states in its entirety:

> *Exemption of person coming into State to attend and testify.* — If a person comes into this State in obedience to a summons directing him [or her] to attend and testify in this State he [or she] shall not while in this State pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his [or her] entrance into this State under the summons.[6]

Prior to the General Assembly enacting what is now the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, under the common law of Maryland, an out-of-State witness or party in a civil or criminal case was exempt from arrest or service of process while the witness or party was in Maryland

---

[6]CJ § 9-304(b) applies to witnesses who are passing through Maryland on their way to another State, and thus does not pertain to this case.

- 14 -

for the purpose of attending a proceeding in the civil or criminal case.  See Long v. Hawken, 114 Md. 234, 235, 79 A. 190 (1911) ("It seems to be clear, that whatever may be the rule in other jurisdictions, it is settled in this [S]tate that a non-resident witness is exempt from service of civil process as well as arrest, while attending on the [C]ourts of the [S]tate."); Feuster v. Redshaw, 157 Md. 302, 304, 306-07, 145 A. 560, 561, 562 (1929) ("The law is settled in Maryland that a non-resident who comes into this [S]tate either as a witness or as a party plaintiff or defendant in a civil action is, while for that purpose coming, staying, and returning in good faith and without unreasonable delay, exempt from the service of process for the commencement of a civil action against him in this [S]tate. . . . The[] reasons are as applicable to criminal prosecutions as they are to civil actions, and, on principle, should have no different conclusion.").  In Feuster, 157 Md. at 303-04, 308, 145 A. at 561, 563, this Court held that a Pennsylvania resident who had been charged with a criminal violation of Maryland's motor vehicle laws was exempt from service of process in a civil case that arose out of a motor vehicle accident, where the Pennsylvania resident was served with summons while he was in a Maryland courtroom waiting for his criminal case to be called.  This Court observed that, among courts in other jurisdictions, there was a split as to whether the exemption from arrest or service of process applied to defendants in both civil and criminal cases.  See id. at 306, 145 A. at 562.

In 1936, the National Conference of Commissioners on Uniform State Laws adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.  See National Conference of Commissioners on Uniform State Laws, Uniform Act to Secure the Attendance of Witnesses from Without a State in

Criminal Proceedings Explanatory Note at 333, http://www.uniformlaws.org/shared/docs/ attendance%20of%20witnesses/attendance%20of%20witnesses%201936.pdf [https:// perma.cc/U78L-JCTR]. Afterward, legislatures in all fifty States and the District of Columbia enacted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. See National Conference of Commissioners on Uniform State Laws, Attendance of Out of State Witnesses, http://www.uniformlaws.org/Act.aspx? title=Attendance%20of%20Out%20of%20State%20Witnesses [https://perma.cc/N4XU-HLTU].

In 1937, the General Assembly enacted what is now titled the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings as Md. Code Ann., Art. 27, §§ 560 through 560E. See 1937 Md. Laws 235 (Ch. 124). CJ § 9-304(a)'s earliest predecessor was the first paragraph of Art. 27, § 560C, which was titled "Exemption From Arrest and Service of Process." See id. at 237. The language of the first paragraph of Art. 27, § 560C was identical to that of its source in the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, and was also identical to CJ § 9-304(a)'s language. Compare id. with National Conference of Commissioners on Uniform State Laws, Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings at 337, http://www.uniformlaws.org/shared/docs/attendance%20of%20witnesses/attendance%20 of%20witnesses%201936.pdf [https://perma.cc/U78L-JCTR] and CJ § 9-304(a).

Although the General Assembly has never changed the language of the provision that eventually became CJ § 9-304(a), the General Assembly has recodified the provision

multiple times.  First, the General Assembly recodified Art. 27, § 560C as Art. 27, § 704, and made the first paragraph subsection (a).  See 1955 Md. Laws 511 (Ch. 333, H.B. 4).  Later, the General Assembly recodified Art. 27, § 704 as Art. 27, § 620, and gave subsection (a) its own title: "Exemption of person coming into state to attend and testify."  See 1973 Md. Laws. 299-300 (July Extraordinary Session, Ch. 2, S.B. 1).  Finally, in 1973, the General Assembly recodified Art. 27, § 620 as CJ § 9-304.  See id.  The Revisor's Note stated that "[t]his section presently appears as Art. 27, §[]620.  No change has been made."  See id. at 300.  In the forty-four years since then, the General Assembly has not amended CJ § 9-304.

Neither this Court nor the Court of Special Appeals has addressed any of CJ § 9-304's predecessors.[7]  Aside from the opinion of the Court of Special Appeals in this case, this Court and the Court of Special Appeals have not decided any issues arising out of CJ § 9-304, and have mentioned CJ § 9-304 in passing in only two cases.

In State v. Breeden, 333 Md. 212, 227, 634 A.2d 464, 471 (1993), this Court held that the State failed to prove that a witness was unavailable because the State did not timely invoke the procedures under the Maryland Uniform Act to Secure the Attendance of

---

[7]In 1985—twelve years after the General Assembly recodified Art. 27, § 620 as CJ § 9-304 in 1973—the General Assembly enacted a new Art. 27, § 620, which pertained to a victim's or representative's right to be present at trial.  See 1985 Md. Laws 2761 (Pt. 4, Ch. 563, S.B. 713).  Afterward, this Court and the Court of Special Appeals mentioned the new Art. 27, § 620 in certain cases.  See, e.g., Cianos v. State, 338 Md. 406, 412, 659 A.2d 291, 294 (1995); Wheeler v. State, 88 Md. App. 512, 529, 596 A.2d 78, 87 (1991).  In 1996, the General Assembly recodified the new Art. 27, § 620 as Art. 27, § 773.  See 1996 Md. Laws 3324 (Vol. V, Ch. 585, S.B. 456).  In 2001, the General Assembly recodified Art. 27, § 773 as Md. Code Ann., Crim. Proc. (2001) § 11-302.  See 2001 Md. Laws 322-23 (Vol. I, Ch. 10, S.B. 1).

Witnesses from Without a State in Criminal Proceedings. In <u>Breeden</u>, <u>id.</u> at 226, 634 A.2d at 471, this Court concluded that the State failed to make efforts in good faith to secure a witness's attendance because "the State . . . sat on its hands with respect to the Uniform Act" to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. This Court noted that the adoption by every State of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings "create[d] a community of jurisdictions [that] will honor the request of fellow members for the appearance of witnesses at criminal proceedings under the conditions specified in the Act." <u>Id.</u> at 223, 634 A.2d at 469 (citation and internal quotation marks omitted). This Court explained that the Act's purposes are "to secure at trial the attendance of a material witness residing in another state" and "to promote the enforcement of the criminal laws and the administration of justice in criminal proceedings in the several [S]tates." <u>Id.</u> at 223, 634 A.2d at 469 (citation, ellipses, and internal quotation marks omitted). This Court quoted provisions of the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, and mentioned CJ § 9-304 only in the following sentence: "[CJ] 9-304 grants the witness exemption from arrest and service of process." <u>See</u> <u>id.</u> at 224, 634 A.2d at 470.

In <u>In re State of Cal. for Los Angeles Cty., Grand Jury Investigation</u>, 57 Md. App. 804, 806-08, 811, 471 A.2d 1141, 1142-43, 1144 (1984), a case involving the appeal of a trial court's issuance of an order requiring a witness located in Baltimore City to appear before a Los Angeles County grand jury, the Court of Special Appeals affirmed the issuance of the order and stated:

> The principal difference is that in the [Uniform Criminal Extradition Act] the person demanded by the requesting State will be returned to that State to face criminal prosecution, while in the [Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings] the person requested is to testify and is specifically exempted from prosecution for matters that "arose before ... entrance into ... [the] State under the summons."

(Quoting CJ § 9-304) (ellipses and last alteration in original).

## Case Law from Other Jurisdictions

As in Maryland, few courts in other jurisdictions have addressed issues as to waiver of the exemption from arrest or service of process under those jurisdictions' Uniform Acts to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. In Foster v. State, 372 N.W.2d 468, 469, 470 (S.D. 1985), the Supreme Court of South Dakota held that a trial court had personal jurisdiction over a defendant where the defendant was brought to South Dakota for the purpose of having him testify in a criminal case that was unrelated to his own. In South Dakota, the defendant had been convicted of a felony drug charge, sentenced to two years' imprisonment and given a date to surrender to a county sheriff to begin serving the sentence. See id. at 468. The defendant did not appear for service of the sentence, and was later arrested in North Dakota on charges that were pending in that State. See id. A trial judge in South Dakota signed a Certificate by Judge for Summons of Witness from Out-of-State under the South Dakota Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings for the purpose of securing the defendant's testimony in a matter that was unrelated to his failure to appear. See id. at 468-69. The defendant signed a waiver of extradition, and was brought to South Dakota. See id. at 469. In South Dakota, the defendant pled guilty to failing to appear

before the sheriff, and was sentenced to five years' imprisonment. See id. The defendant subsequently filed a Writ of Habeas Corpus, which was dismissed. See id.

On appeal, the defendant contended that the trial court lacked personal jurisdiction over him because he was brought to South Dakota as a witness, and thus was exempt from arrest under South Dakota's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. See id. at 470. The Supreme Court of South Dakota disagreed, and observed that the State of South Dakota "neither intended, nor relied in fact upon," South Dakota's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings to have the defendant brought to South Dakota for the purpose of prosecuting him for failing to appear before the sheriff. See id. The Court stated that the defendant had not identified any irregularities that would invalidate the waiver of extradition that he signed before being brought to South Dakota. See id. Finally, the Court concluded that any irregularities in extradition proceedings would not deprive South Dakota's trial courts of personal jurisdiction over the defendant. See id.

In Zeller v. Cumberland Truck Sales, 253 S.E.2d 111, 112-13 (S.C. 1979), a civil case involving a dispute over fees for repair of a vehicle, the Supreme Court of South Carolina held that a defendant did not implicitly waive an exemption from service of process by failing to raise the exemption before a trial court ordered default judgment. The Supreme Court of South Carolina rejected the plaintiff's contention that the defendant impliedly waived the exemption from service by failing to assert the exemption before the trial court ordered default judgment. See id. at 112-13. The Court explained:

The exemption or immunity from service of process, afforded under [the

exemption provision of South Carolina's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings], is a personal privilege or exemption and may be waived by the person otherwise entitled thereto. [The plaintiff] correctly states that the applicable rules require a prompt assertion of the exemption from service of process and, ordinarily, such immunity should be claimed prior to judgment. The latter, however, is not an absolute rule but must be weighed in the light of all of the surrounding facts and circumstances.

Id. (citations and paragraph break omitted). In Zeller, id. at 113, the Court concluded that it was reasonable to infer that the service of two summonses that had been stapled together without a complaint gave the impression that only one case was pending. The Court noted that a letter from the defendant's lawyer to the plaintiff's lawyer, apart from South Carolina's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, should have put the plaintiff's lawyer on notice that the defendant did not intend for the trial court to issue default judgment in the plaintiff's case. See id. The Court concluded that "[t]hese circumstances raise sufficient doubts to justify the refusal to imply waiver from the alleged silence of" the defendant. Id.

Independent of other jurisdictions' Uniform Acts to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, courts in other jurisdictions have addressed issues as to waiver of an exemption from arrest or service of process under other jurisdictions' common law. In Bradford v. Nat'l Distillers & Chem. Corp., 571 P.2d 1040, 1041 (Ariz. Ct. App. 1977), without referring to Arizona's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, the Court of Appeals of Arizona held that an out-of-State witness who is in Arizona to testify in one case waives immunity from service of process in another case by delaying an assertion of

that immunity. In <u>Bradford</u>, <u>id.</u>, an Arkansas resident came to Arizona to testify at a deposition. The deposition was cancelled on the day on which it was scheduled, and the parties to the case settled. <u>See</u> <u>id.</u> While he was in Arizona, the Arkansas resident was sued and served with summons. <u>See</u> <u>id.</u> The Arkansas resident took no action, and an Arizona trial court ordered default judgment against him. <u>See</u> <u>id.</u> Five years later, the Arkansas resident moved to vacate the default judgment for lack of personal jurisdiction, contending that he was immune because he was in Arizona for the purpose of testifying in another case. <u>See</u> <u>id.</u> An Arizona trial court denied the motion to vacate, and the Court of Appeals of Arizona affirmed. <u>See</u> <u>id.</u> The Court explained:

> The immunity upon which [the Arkansas resident] relies is a privilege extended by the court and not a jurisdictional matter, and in order to obtain the benefit of this privilege, the person served must timely urge the court to extend it. A delay in doing so, especially a delay of five years after entry of the judgment, as here, constitutes a waiver of any possible immunity.

<u>Id.</u> (citations omitted).

In <u>Eaton v. Eaton</u>, 243 P. 1040-41 (Kan. 1926), the Supreme Court of Kansas held that a Texas resident who was in Kansas as a defendant in a criminal case waived the exemption from service of process in a civil case by failing to assert that exemption until after judgment. In <u>Eaton</u>, <u>id.</u> at 1040, the Texas resident's wife, who lived in Kansas, sued him for divorce and alimony, and service was made by publication; the Texas resident's wife also filed a criminal complaint against him for failure to pay child support. While the Texas resident was visiting his children in Kansas, he was arrested, and he posted bail. <u>See</u> <u>id.</u> When the Texas resident appeared for trial in Kansas, he was served with summons in the divorce case. <u>See</u> <u>id.</u> Judgment was entered against the Texas resident, who then

- 22 -

moved to set aside the judgment on the ground that the service of summons was invalid. See id. At the time, the National Conference of Commissioners on Uniform State Laws had not yet adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings; however, under the common law of Kansas, an out-of-State party was exempt from service of summons while the party was in court, or on the way to or from court. See id. In Eaton, id. at 1040-41, a trial court denied the motion to set aside, and the Supreme Court of Kansas affirmed, stating that the exemption from service of summons "must be claimed at as early a stage of the proceeding as possible"—for example, in a motion or an answer to a complaint. See id. at 1041 (citation omitted). The Supreme Court of Kansas explained that the Texas resident could have moved to set aside the service of the summons when the answer to the complaint was due, and should have filed the motion before judgment. See id. The Supreme Court of Kansas stated: "Instead of moving promptly, [the Texas resident] allowed judgment to be taken, allowed the term to lapse, and then undertook to proceed as though the judgment were void. The result is he waived his privilege." Id.

**Maryland Rules 4-252 and 8-131(a)**

Maryland Rule 4-252 states in pertinent part:

(a) **Mandatory motions.** In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

(1) A defect in the institution of the prosecution;

(2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense;

(3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

(4) An unlawfully obtained admission, statement, or confession; and

(5) A request for joint or separate trial of defendants or offenses.

(b) **Time for filing mandatory motions.**  A motion under section (a) of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4-213(c), except when discovery discloses the basis for a motion, the motion may be filed within five days after the discovery is furnished.

\* \* \*

(d) **Other motions.**  A motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised and determined at any time.  Any other defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion filed at any time before trial.

Maryland Rule 8-131(a) states in its entirety:

The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2-322,[8] over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

### Personal Jurisdiction

Personal jurisdiction is "[a] court's power to bring a person into its adjudicative process; jurisdiction over a defendant's personal rights, rather than merely over property

---

[8]Maryland Rule 2-322 applies only to civil cases in circuit courts.  Maryland Rule 2-322(a)(1) states: "The following defenses shall be made by motion to dismiss filed before the answer, if an answer is required: [] lack of jurisdiction over the person. . . . If not so made and the answer is filed, these defenses are waived."

interests." Personal Jurisdiction, Black's Law Dictionary (10th ed. 2014). Under the <u>Ker-</u>

<u>Frisbie</u> Doctrine, a trial court has personal jurisdiction over a defendant in a criminal case

where the crime was committed within the trial court's jurisdiction and the defendant is

physically present before the trial court, regardless of how the defendant was brought

before the circuit court. <u>See</u> <u>Clark v. State</u>, 284 Md. 260, 277, 396 A.2d 243, 253 (1979)

(This Court discussed <u>Ker v. People of State of Illinois</u>, 119 U.S. 436 (1886) and <u>Frisbie</u>

<u>v. Collins</u>, 342 U.S. 519 (1952), and explained that Maryland law is in accord, stating:

"[T]he right to try is founded on the fact that the crime was committed within the

jurisdiction of the Court and upon the further fact that the [defendant] after being indicted

is present in person before the Court during the trial. It is not material how or by what

means he [or she] was brought into Court[.]" (Quoting <u>Rigor v. State</u>, 101 Md. 465, 470,

61 A. 631, 633 (1905)); <u>see also</u> *Ker-Frisbie* Rule, Black's Law Dictionary (10th ed. 2014)

("The principle that the government's power to try a criminal defendant is not impaired by

the defendant's having been brought back illegally to the United States from a foreign

country.").

In <u>Ker</u>, 119 U.S. at 443, 444, where the defendant was kidnapped from Peru and

brought by force to the United States for trial, the Supreme Court held that it was not a

"valid objection" for a defendant in a criminal case to raise the circumstance of "his forcible

seizure in another country, and transfer by violence, force, or fraud to this country[.]" The

Supreme Court explained its holding as follows: "[A]bduction is no sufficient reason why

the party should not answer when brought within the jurisdiction of the court which has

the right to try him [or her] for such an offense, and presents no valid objection to his [or

her] trial in such court." Id. at 444.

In Frisbie, 342 U.S. at 522, the Supreme Court reaffirmed its holding in Ker, 119 U.S. at 444, and reiterated that "the power of a court to try a person for crime is not impaired by the fact that he [or she] had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" (Footnote omitted). In Frisbie, 342 U.S. at 519-20, an inmate petitioned for a writ of habeas corpus, alleging that, while he was living in Illinois, law enforcement officers from Michigan kidnapped him and took him to Michigan, where he was convicted of murder. The Supreme Court held that the inmate was not entitled to relief, and explained:

> [D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him [or her] and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he [or she] was brought to trial against his [or her] will.

Id. at 522.

In Clark, 284 Md. at 277, 396 A.2d at 253, this Court stated that the principle set forth by the Supreme Court in Frisbie, 342 U.S. at 522—that an abduction does not deprive a court of jurisdiction—was consistent with Maryland law. In Clark, 284 Md. at 263, 276, 396 A.2d at 245, 252, an inmate escaped from a Maryland prison, and ended up being incarcerated again in an Oregon prison. The State filed a detainer against the inmate, who, in a letter to the Maryland State Police, requested that he be brought back to Maryland to serve the remainder of the sentence that he had received in Oregon. See id. at 276, 396 A.2d at 252. The State treated the inmate's letter as a waiver of extradition, had him

- 26 -

brought back to Maryland, and prosecuted him for escaping from prison. See id. at 276, 396 A.2d at 252. In the trial court and on appeal, the inmate contended that his prosecution was illegal under the Uniform Criminal Extradition Act. See id. at 277, 396 A.2d at 252. This Court rejected the inmate's contention, and noted that the inmate correctly conceded that he was properly before the trial court because the forcible return of a person to a State does not deprive a court of jurisdiction. See id. at 277, 396 A.2d at 252-53.

In McGuire v. State, 200 Md. 601, 603, 609, 92 A.2d 582, 583, 585 (1952), where Baltimore City police officers located a defendant in Washington, D.C. in connection with a violation of the lottery laws in Maryland and the defendant agreed to accompany the officers to Baltimore, this Court stated that the trial court's jurisdiction would not be affected even if law enforcement officers had illegally brought the defendant to Maryland. Specifically, this Court stated: "Even if the action of the [officers of the Baltimore Police Department] in taking [the defendant] to Baltimore could be held to be unlawful, such fact would not affect the jurisdiction of the Maryland court or vitiate his indictment and trial." Id. at 609, 92 A.2d at 585 (citing Davis v. Brady, 188 Md. 113, 51 A.2d 827 (1947); Rigor, 101 Md. 465, 61 A. 631).

**Analysis**

Here, we conclude that an out-of-State witness who enters Maryland to testify at a trial in a criminal case pursuant to a summons under the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, and who is then arrested and charged with a crime in Maryland, waives any issue as to a violation of CJ § 9-304(a) by failing to raise the issue pretrial as required by Maryland Rule 4-252.

Maryland Rule 4-252(a) identifies certain matters, such as "[a] defect in the institution of the prosecution[,]" and provides that such "matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise[.]" Maryland Rule 4-252(d) unequivocally states that, other than a motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense, any "defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion filed at any time before trial."

In agreement with the Court of Special Appeals, we conclude that Maryland Rule 4-252(a)(1) requires that an alleged violation of CJ § 9-304(a) be raised pretrial, as Maryland Rule 4-252 requires that a motion alleging a defect in the institution of the prosecution be filed within the timeframe specified under Maryland Rule 4-252(b). See Lewis, 229 Md. App. at 107-08, 143 A.3d at 190. Indisputably, instituting prosecution in a criminal case involves, among other things, the arrest of the defendant or issuance of process to secure the defendant's appearance in the matter. In addition to the requirements of Maryland Rule 4-252(a)(1) and (b), Maryland Rule 4-252(d) applies. The matter of whether CJ § 9-304(a) has been violated is capable of determination before trial and does not involve trial of the general issue, as the facts that would be relevant in a determination of such a matter are wholly independent of the alleged criminal conduct. Specifically, the facts that would be at issue in deciding whether CJ § 9-304(a) has been violated include: whether the defendant received a summons pursuant to the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings; whether the defendant entered Maryland pursuant to such summons; and whether the

defendant was arrested or served with process "in connection with matters which arose before his [or her] entrance into this State under the summons." CJ § 9-304(a). Because a trial court is capable of determining before trial whether a violation of CJ § 9-304(a) occurred, Maryland Rule 4-252(d) requires the defendant to raise the issue in a pretrial motion; if the defendant fails to do so, the issue is waived.[9]

Independent of the requisites of Maryland Rule 4-252(a)(1), (b) and (d), where, as here, a defendant not only fails to raise an alleged violation of CJ § 9-304(a) in a pretrial motion, but also fails to raise the issue at any time in the trial court, a defendant may forfeit appellate review of the matter under Maryland Rule 8-131(a), which provides, in pertinent part, that "the appellate court will not decide any [non-jurisdictional] issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" As this Court explained in Nalls v. State, 437 Md. 674, 691, 89 A.3d 1126, 1136 (2014):

> Generally, in order to "preserve" an issue for appellate review, the complaining party must have raised the issue in the trial court or the issue was decided by the trial court. Md. Rule 8-131(a). In other words, if a party fails to raise a particular issue in the trial court, or fails to make a contemporaneous objection, the general rule is that he or she waives that issue on appeal.

(Footnote and some citations omitted).

---

[9]Cases from other jurisdictions support such a conclusion. Zeller, 253 S.E.2d at 112, Bradford, 571 P.2d at 1041, and Eaton, 243 P. at 1040 are civil cases from other jurisdictions that involved exemption from service of process. It is instructive that, in all three cases, the Courts stated that an out-of-State defendant must assert the exemption promptly. See Zeller, 253 S.E.2d at 112 ("[T]he applicable rules require a prompt assertion of the exemption from service of process[.]"); Bradford, 571 P.2d at 1041 ("[T]o obtain the benefit of this privilege, the person served must timely urge the court to extend it."); Eaton, 243 P. at 1040 ("[T]he privilege must be claimed at as early a stage of the proceeding as possible." (Citations omitted)).

The purpose of Maryland Rule 8-131(a) is "to prevent 'sandbagging' and to give the trial court the opportunity to correct possible mistakes in its rulings. An appeal is not an opportunity for parties to argue the issues they forgot to raise in a timely manner at trial." Peterson v. State, 444 Md. 105, 126, 118 A.3d 925, 936-37 (2015) (citations and internal quotation marks omitted). Allowing a defendant to raise the issue of an alleged violation of CJ § 9-304(a) for the first time on appeal would enable defendants to refrain from raising the issue, wait to see the outcome of trial, and, if the defendant is convicted, attempt to secure reversal by raising the alleged violation of CJ § 9-304(a) for the first time on appeal.

It is fair to require a defendant from outside Maryland to assert an issue as to a violation of CJ § 9-304(a) before trial. Given that such a defendant would have entered Maryland pursuant to a summons for an out-of-State witness and then been charged with a crime, the issue of whether the defendant was arrested or served with process in violation of CJ § 9-304(a) would have been known, or should have been known, to the defendant well in advance of trial, thereby giving the defendant an opportunity to raise the matter in a pretrial motion pursuant to Maryland Rule 4-252.

At oral argument, Lewis contended that the circuit court had the burden to *sua sponte* raise the issue of a violation of CJ § 9-304(a) because the same circuit court judge issued the Certificate for Attendance of Witness from Colorado State and presided over Lewis's trial. We do not accept the notion that a trial court has the burden to *sua sponte* raise the issue of a violation of CJ § 9-304(a). We see no valid reason, even where the same judge issues the summons and presides at trial, to treat an alleged violation of CJ §

9-304(a) differently from any other defense that a defendant, not a trial court, is obligated to raise prior to trial under Maryland Rule 4-252—such as any other issue that Maryland Rule 4-252 requires to be raised before trial. Thus, the defense must be raised by motion filed at any time before trial, *i.e.*, the defense must be timely asserted and the circuit court has no obligation to raise the issue on the defendant's behalf. See Md. R. 4-252. Where, as here, an issue as to a violation of CJ § 9-304(a) is raised for the first time on appeal, the issue is waived and not preserved for appellate review.

Notably, in contending that the circuit court improperly exercised personal jurisdiction over him, Lewis relies on two cases from other jurisdictions, Wright v. State, 500 P.2d 582 (Okla. Crim. App. 1972) and State ex rel. Forte v. Ferris, 255 N.W.2d 594 (Wis. 1977). Aside from being case law that this Court is not bound to follow, each case is distinguishable because the defendant timely raised an issue in the trial court. In Wright, 500 P.2d at 586, the defendant filed a pretrial motion to dismiss on the ground that his prosecution was instituted in violation of Oklahoma's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. The Court of Criminal Appeals of Oklahoma rejected the defendant's contention that the charges against him were invalid due to a failure to adhere to Oklahoma's Uniform Act, explaining that the defendant was properly extradited to Oklahoma. See id. at 587, 588-89.

In Forte, 255 N.W.2d at 595, a case involving Wisconsin's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, the defendant served a sentence in Wisconsin and then was placed on parole; the defendant later went to Illinois and was permitted to remain there pending acceptance of his parole supervision by

Illinois authorities. While the defendant was in Illinois, a Wisconsin trial court sought to secure the defendant's presence as a witness at a murder trial pursuant to Wisconsin's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings; a summons was issued directing the defendant to appear at the trial in Wisconsin and the defendant obeyed. See id. at 595-96. At the trial, the defendant refused to testify and was jailed for contempt of court; the defendant's Wisconsin parole agent then placed a parole detainer on him. See id. at 596. A few days later, while still subject to the parole detainer, the defendant was charged with murder; the defendant petitioned for a writ of habeas corpus, contending that his detention violated Wisconsin's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. See id. The Supreme Court of Wisconsin agreed with the defendant, finding that the protections of Wisconsin's Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings could not be limited after the defendant arrived in Wisconsin, and concluding that the parole detainer was "tantamount to an arrest." Id. at 599 (citation omitted).

Significantly, however, neither Wright nor Forte includes any discussion of waiver of the issue of a violation of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, as both defendants timely raised the issue prior to trial. Contrary to the purpose for which Lewis relies on the cases, Wright and Forte illustrate that the proper time at which to raise an alleged violation of the Uniform Act is before trial, not on appeal.

We reject Lewis's contention that our holding is inconsistent with Md. Code Ann.,

- 32 -

Crim. Proc. (2001, 2008 Repl. Vol.) ("CP") § 9-124, which is part of the Uniform Criminal

Extradition Act, and states in its entirety:

>  (a) *In general.* — (1) Any person arrested in this State charged with having committed any crime in another state or alleged to have escaped from confinement, or broken the terms of bail, probation, or parole, may waive the issuance and service of the warrant provided for in §§ 9-107 and 9-108 of this title, and all other procedure incidental to extradition proceedings, by executing or subscribing in the presence of a judge of any court of record within this State a writing that states that the person consents to return to the demanding state.
>
>  (2) Before a waiver is executed or subscribed by the person, it shall be the duty of the judge to inform the person of the right to the issuance and service of a warrant of extradition and the right to obtain a writ of habeas corpus as provided in § 9-110 of this title.
>
>  (b) *Action on consent.* — (1) If and when a consent has been duly executed, it shall forthwith be forwarded to the office of the Governor of this State and filed therein.
>
>  (2) The judge shall:
>
>  (i) direct the officer having the person in custody to deliver forthwith the person to a duly accredited agent of the demanding state; and
>
>  (ii) deliver or cause to be delivered to the agent a copy of the consent.
>
>  (c) *Construction.* — (1) This section does not limit the rights of the accused person to return voluntarily and without formality to the demanding state.
>
>  (2) This waiver procedure is not an exclusive procedure and does not limit the powers, rights, or duties of the officers of the demanding state or of this State.

According to Lewis, because CP § 9-124(a)(1) requires an express, written waiver of

service of a warrant for extradition, an express waiver of any issue as to a violation of CJ

§ 9-304(a) is also required.

- 33 -

We disagree. Simply put, Lewis's contention is misguided. Entering Maryland pursuant to a summons, and then being arrested or served with process in connection with a crime in Maryland, is not comparable to being extradited to Maryland. Obviously, as a threshold matter, because Lewis was not extradited to Maryland, CP § 9-124(a)(1)'s requirement of an express waiver does not apply.

And, in actuality, CP § 9-124(a)(1) supports our holding that an express waiver is not required under CJ § 9-304(a). In drafting CP § 9-124(a)(1)'s language, the General Assembly chose to require an express waiver where another State initiates extradition proceedings of a person who has been arrested in Maryland. By contrast, in drafting CJ § 9-304(a)'s language, the General Assembly did not include a requirement of an express waiver where the State charges a person who entered Maryland pursuant to a summons. We decline to read such a requirement into CJ § 9-304(a); in interpreting a statute, a court does not "add . . . words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used[.]" Bottini v. Dep't of Fin., 450 Md. 177, 188, 147 A.3d 371, 378 (2016); see also id. at 206, 147 A.3d at 389 ("[T]he General Assembly could have identified a bank account and the funds contained in a bank account as a separate classification of property subject to forfeiture, or as a specific form of tangible or intangible personal property distinct from money, had it desired to do so." (Citation omitted)).

We find no merit in Lewis's contention that the circuit court's exercise of personal jurisdiction over him was improper in light of the Doctrine of Specialty, "under which a person who is extradited to a country to stand trial for certain criminal offenses may be

tried only for those offenses and not for any other pre-extradition offenses." Doctrine of Specialty, Black's Law Dictionary (10th ed. 2014); see also United States v. Rauscher, 119 U.S. 407, 424 (1886) (An extradited "party shall not be delivered up by this government to be tried for any other offense than that charged in the extradition proceedings[.]"). Lewis argues that, like the Doctrine of Specialty, CJ § 9-304(a) prohibits the State from securing a person's presence in Maryland, and then exercising jurisdiction over him in a separate matter. Lewis's attempt to analogize the Doctrine of Specialty to CJ § 9-304(a) and the circumstances of this case fails because, given that the statute governing extradition is inapplicable here, the Doctrine of Specialty would be equally inapplicable. In United States v. Valencia-Trujillo, 573 F.3d 1171, 1173-74 (11th Cir. 2009), the Eleventh Circuit described the purpose of the Doctrine of Specialty as follows:

> The rule of specialty "stands for the proposition that the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered." The rule is grounded in concerns of international comity. As we have explained, "[b]ecause the surrender of the defendant requires the cooperation of the surrendering state, preservation of the institution of extradition requires that the petitioning state live up to whatever promises it made in order to obtain extradition."

(Citations omitted). Grounded in concerns of international comity, contrary to Lewis's contention, the Doctrine of Specialty involves policy considerations that are not at issue in this case.

We are also unpersuaded by Lewis's argument that, unless we require an express waiver of the issue of a violation of CJ § 9-304(a), trial courts will be "unaccountable" for violations of law, and an out-of-State witness will lack a remedy on appellate review.

There is a simple way for a defendant to ensure that an appellate court will consider an issue as to the protections afforded by CJ § 9-304(a), which is: raise the issue in a pretrial motion. That way, the trial court will have the opportunity to address the matter, which will be preserved for appellate review, and the issue of the need for an explicit waiver would be non-existent.

Applying our holding to this case's facts, we conclude that Lewis waived the issue of a violation of CJ § 9-304(a) by failing to raise the issue pretrial in the circuit court. Pursuant to the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, the State secured Lewis's presence in Maryland to testify at Bennett's trial. On the day on which Bennett's trial was to begin, Bennett entered into a guilty plea agreement, and made a proffer in which he inculpated Lewis. At oral argument, Lewis's counsel acknowledged that "there is no evidence that the State knew in advance, prior to the proffer, that [] Bennett was going to give the proffer that he did." Lewis's counsel acknowledged that "[t]here is no evidence of bad faith" on the State's part. In short, before Bennett's proffer, the State had no reason to treat Lewis as a suspect or a potential defendant. As a result of Bennett's proffer, an investigation occurred, and Lewis was arrested and charged with crimes. Lewis never asserted an issue as to a violation of CJ § 9-304(a) in the circuit court, whether in a motion pursuant to Maryland Rule 4-252 or otherwise; instead, Lewis raised the issue for the first time on appeal. Indeed, Lewis concedes that he failed to preserve the issue as to the violation of CJ § 9-304(a) for appellate review.

Lewis asks us to exercise our discretion, pursuant to Maryland Rule 8-131(a), to

review the unpreserved issue.  We decline to do so.  In <u>Ray v. State</u>, 435 Md. 1, 22, 76 A.3d 1143, 1155 (2013), this Court noted:

> We usually elect to review an unpreserved issue only after it has been thoroughly briefed and argued, and where a decision would (1) help correct a recurring error, (2) provide guidance when there is likely to be a new trial, or (3) offer assistance if there is a subsequent collateral attack on the conviction.

None of the circumstances that are described in <u>Ray</u> exist here.  There is no indication that there are recurring violations of CJ § 9-304(a).  Indeed, since the provision was recodified as CJ § 9-304 forty-four years ago, this Court has never been called upon to decide an issue involving an alleged violation of CJ § 9-304(a).  And, there is no case law interpreting CJ § 9-304's predecessors.  The facts of this case are unusual.  Lewis was present in Maryland pursuant to an out-of-State witness summons and, prior to the scheduled trial, the person against whom Lewis was summonsed to testify gave a proffer implicating him in the murder for which the person was to be tried.  These are not circumstances that happen on a recurring basis.  There is not a need to provide guidance for purposes of a new trial, given that the issue concerning the propriety of Lewis's arrest does not involve resolution of matters that occurred during trial.  Finally, there is no need to offer assistance for purposes of a collateral attack on Lewis's convictions, given that, to prevail on a claim of ineffective assistance of counsel, Lewis would have to satisfy the "prejudice" prong under <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984)—<i>i.e.</i>, Lewis would have to prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Jamison v. State</u>, 450 Md. 387, 413 n.19, 148 A.3d 1267, 1283 n.19 (2016) (quoting <u>Strickland</u>, 466 U.S. at 694) (internal quotation marks

omitted). In other words, Lewis would be required to establish that the result of the criminal proceeding would have been different if his trial counsel had raised the issue of a violation of CJ § 9-304(a) in a pretrial motion. This would be difficult to do because, if Lewis had not been arrested in Maryland and had returned to Colorado, the State would have been able to initiate extradition proceedings, and prosecute Lewis in the same manner that it did at his trial in this case. Stated differently, Lewis's trial would have proceeded, and the State would have presented the same evidence against him, if he had been extradited from Colorado rather than arrested while he was in Maryland.

Having held that Lewis waived the issue as to a violation of CJ § 9-304(a), we conclude that the circuit court had personal jurisdiction over Lewis by virtue of his physical presence before the circuit court. Under the Ker-Frisbie Doctrine, a trial court has personal jurisdiction over a defendant in a criminal case where the crime was committed within the trial court's jurisdiction and the defendant is physically present before the trial court, regardless of how the defendant was brought before the trial court. See Rigor, 101 Md. at 470, 61 A. at 633 ("[T]he right to try is founded on the fact that the crime was committed within the jurisdiction of the court, and upon the further fact that the [defendant], after being indicted, is present in person before the court during the trial. It is not material how or by what means he [or she] was brought into court[.]"). As in McGuire, 200 Md. at 609, 92 A.2d at 585, any unlawful act in arresting Lewis in Maryland and bringing him before the circuit court would not have undermined the existence of the circuit court's jurisdiction. Rather, as the Court of Special Appeals explained, the issue is whether the circuit court should have exercised personal jurisdiction, not whether the circuit court possessed such

- 38 -

jurisdiction.  See Lewis, 229 Md. App. at 102, 143 A.3d at 187.

Indeed, in his brief, Lewis notes that he does not dispute that the circuit court had personal jurisdiction over him, but instead contends that the circuit court should have refrained from exercising personal jurisdiction over him because he was arrested in violation of CJ § 9-304(a).  As discussed above, Lewis waived the issue of a violation of CJ § 9-304(a) by failing to raise it pretrial as required by Maryland Rule 4-252; and, we decline to exercise our discretion to review the matter.

            **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.  PETITIONER TO PAY COSTS.**